(No. 33510.—

CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed June 16, 1955—Rehearing denied September 19, 1955.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JOHN L. ROACH, of counsel,) for appellant.

HADLEY, LEREN & BUREK, and NELSON TROTTMAN, both of Chicago, (LOWELL HASTINGS, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is a direct appeal by the Department of Revenue from a judgment of the circuit court of Du Page County, which found that the 1953 assessment of all of the real and personal property of the Chicago and North Western Railway Company in Illinois, in the sum of $86,750,000, was excessive to the extent of $36,750,000, and ordered a reduction to $50,000,000. Revenue and constitutional questions are presented.

The Revenue Act of 1939 imposes the duty of assessing the value of the operating property of railroads for the imposition of the general property tax upon the Department of Revenue, which ascertains the value of the property of each railroad as a unit and then certifies to each taxing district in which property of the railroad is located its appropriate portion of the total statewide value. (Ill. Rev. Stat. 1953, chap. 120, pars. 560-571.) The present controversy turns largely upon the following provisions of section 80 of the act:

"For the purpose of determining the fair cash value of the property of any railroad company the commission shall take into consideration the actual or market value of the shares of stock outstanding, the actual or market value of all bonds outstanding and all other indebtedness as shall be applicable, for operating the road, provided, in determining the market value of any such stock or indebtedness the commission shall consider quotations for the next preceding five years; the net earnings of the company during the five calendar years preceding the assessment date; and such other information as the Department may consider as bearing on the fair cash value of the property: Provided, that the facts hereinbefore named shall not be con-

clusive upon the Department in determining the fair cash value of the property of a railroad company."

Section 82 requires every railroad company in Illinois, in April of each year, to furnish the Department specific information, including

"(8) The reproduction cost of the property within Illinois and the total reproduction cost of all property of such company. Said reproduction cost, so far as applicable, shall be as last determined by the United States Interstate Commerce Commission, or other competent authority, plus additions and betterments, less retirements and depreciation to the December 31 next preceding the assessment. * * *

"(10) Any other information the Department may require to determine the fair cash value of the property of any railroad company, or necessary to carry out the provisions of this Act."

The formula used in assessing plaintiff's property was the same as that used in assessing all other railroads. The Department first took the average of plaintiff's net earnings for the preceding five-year period, which amounted to $7,668,000. Capitalized at six per cent, this amount indicated an estimated system value of $127,800,000. The Department determined that 28.32 per cent of plaintiff's total assets were located in Illinois, and the plaintiff accepted that allocation factor. Application of the allocation factor indicated a value of $36,194,000 for plaintiff's Illinois property, based upon capitalized earnings. The Department then determined the market value of plaintiff's outstanding bonds and other indebtedness and of its shares of stock, based upon high and low monthly quotations for the years 1948 to 1952, inclusive, which amounted to $227,234,000. From this figure, $71,881,000, the value of non-operating property, (intangible investments, $26,024,000; locally assessed property, $5,825,000; cash invested in U.S. Treasury bonds and certificates. $40,032,000,) was deducted, leaving a net market value, based upon the aggregate value

of plaintiff's shares of stock and debt, of $155,353,000. *Application of the allocation factor reduced this amount to $43,996,000*, which represented the market value of plaintiff's outstanding shares and debt allocable to Illinois. The Department next determined that the reproduction cost, less depreciation, of plaintiff's property in Illinois, computed by the Interstate Commerce Commission, was $239,590,000. This amount was reduced by $22,880,000 for public improvements and $3,710,000 for uneconomic branch lines, leaving an estimated reproduction cost less depreciation of $213,000,000.

In arriving at its final assessment, the Department averaged these three factors in the case of plaintiff's property and the property of forty-five other railroad companies. This method was pursued prior to the enactment of the Revenue Act of 1939 and in each year thereafter. The three amounts entering into the calculations, so far as plaintiff is concerned, were: (1) Capitalized earnings value $36,194,000; (2) Stock and debt value, $43,996,000; (3) Reproduction cost, less depreciation, $213,000,000. The average of these three items is $97,730,000.

The railroad assessor of the Department frankly stated that there was no contention that the Department's findings were objectively correct in every detail; that the Department made no claim that any one or more of the evidences or appraisals before it were of conclusive validity; that doubts were resolved by the Department by reducing the assessed valuation of $97,730,000 shown by the formula calculation by the sum of $10,730,000 to arrive at an original assessment of $87,000,000; that in making this reduction factors which seemed to indicate adverse trends and worsened business conditions,—higher wages, truck competition, and the like,—were taken into account. At the hearing before the Department upon the plaintiff's application for correction of the assessment, the valuation was further reduced to $86,750,000.

The trial judge found that the disparity between reproduction cost less depreciation and plaintiff's earning power was so great that reproduction cost was unreliable as a measure of value of its railroad operating property; that the final assessment resulted from giving excessive and undue weight to reproduction cost and was more than 100 per cent in excess of the value resulting from the use of the "statutory standards" of capitalized earnings and stock and debt market values; that the value of plaintiff's operating property in Illinois, as determined by the Department, was excessive and not within the limits of the proper exercise of judgment or permissible discretion on its part, and that the fair cash value of plaintiff's operating property in Illinois did not exceed $50,000,000. Upon the basis of these findings, judgment was entered reducing the assessment to $50,000,000.

The Department first contends that the circuit court was without power to change the challenged assessment except upon a showing of fraud or wilful disregard, as distinguished from an erroneous application, of the statutory command of fair valuation, and that in any event the Department's valuation was sound and was neither fraudulently excessive nor in wilful disregard of the statute.

To justify the exercise of jurisdiction by the trial court in this case it is necessary only to refer to the settled principle that assessments of property may be so excessive and may have been made under such circumstances as to justify the conclusion that the assessment was not honestly made and was known to be excessive, and that under such circumstances assessments have been held to be subject to judicial review. (*People ex rel. Hellyer* v. *Hendrickson*, 373 Ill. 99; *People ex rel. Little* v. *St. Louis Electric Bridge Co.* 290 Ill. 307; *People's Gas Light and Coke Co.* v. *Stuckart*, 286 Ill. 164; *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602.) Whether an over-valuation is so excessive as to be fraudulent is largely dependent upon the circumstances

of each particular case. (*People ex rel. Nash* v. *Norton,* 358 Ill. 272; *Burton Stock Car Co.* v. *Traeger,* 187 Ill. 9.) To set aside an assessment, it is not necessary to show fraud in its generally accepted meaning; if the taxing authorities have assessed the property at a valuation grossly in excess of its market value, and the assessment was deliberately and wilfully made, such conduct constitutes a constructive fraud, and the courts will protect the taxpayer against the wrong sought to be perpetrated against him. (*People ex rel. Rhodes* v. *Turk,* 391 Ill. 424; *People ex rel. McGaughey* v. *Wilson,* 367 Ill. 494; *People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173; *People ex rel. Little* v. *St. Louis Electric Bridge Co.* 290 Ill. 307.) Tested in the light of these familiar rules, plaintiff's complaint was sufficient to state a case of constructive fraud.

On the merits plaintiff argues that the most reliable standards in valuing the property of a railroad are the market values of its securities and its capitalized earnings, either singly or in combination, and that where, as here, there is a great disparity between the value indicated by reproduction cost and the value otherwise indicated, reproduction cost is entitled to little, if any, weight. The Department, on the contrary, maintains that the method which it used was not improper.

Throughout its brief plaintiff refers to capitalized earnings and market value of securities as the "statutory standards," and appears to argue that the statute does not permit consideration of reproduction cost in determining the assessed value of railway properties. This position is based on the fact that section 80 specifically requires the Department to take into consideration capitalized earnings and the market value of securities, but does not specifically mention reproduction cost depreciated. It is unsound because section 80 expressly states that the factors which it mentions "shall not be conclusive upon the Department in determining the fair cash value of the property of a railroad

company." (Ill. Rev. Stat. 1953, chap. 120, par. 561.) And section 82, which prescribes the information which a railroad must furnish to the Department to enable it to determine fair cash value, requires information as to reproduction cost as well as capitalized earnings and market value of securities. Ill. Rev. Stat. 1953, chap. 120, par. 563.

Railway property is hard to value and the process of valuation has not been subjected to rigid rules. "The ascertainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rule. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and properly may be taken into account to guide judgment in determining what is the money equivalent— the actual value—of the property." (*Rowley* v. *Chicago & North Western Railway Co.* 293 U.S. 102, 109.) "In determining the amount of the assessment the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give to them such weight as reasonably they might be deemed to have." *Great Northern Railway Co.* v. *Weeks,* 297 U.S. 135, 139.

The physical value of property, shown either by reproduction cost or historical cost, has been held to be an important factor in fixing values for taxation purposes. In *People ex rel. Hellyer* v. *Hendrickson,* 373 Ill. 99, 102, this court observed: "Opinion evidence based only on one factor, which ignores the others, is not sufficient to establish gross over-valuation." In *People ex rel. McDonough* v. *Grand Trunk Western Railroad Co.* 357 Ill. 493, which involved the valuation of a railroad company's property in Illinois, the taxpayer introduced testimony to prove the value of its railroad system as an entirety, employing the "stock-and-bond method" and the "capitalized-earnings method." This court pointed out that no testimony was

offered to establish the value of the railroad company's property by proving reproduction costs, less depreciation and obsolescence, or the historical cost, and said: "These factors of reproduction costs and historical cost are important, although not necessarily controlling, in determining the fair cash market value of a railroad property." The propriety of the use of reproduction cost in establishing valuations for assessment purposes was also recognized in *Sanitary District of Chicago* v. *Young,* 285 Ill. 351, 360; *People ex rel. Wangelin* v. *St. Louis Bridge Co.* 357 Ill. 245, 252; *People ex rel. Toman* v. *Chicago Union Station Co.* 383 Ill. 153.

In *Bailey* v. *Megan,* 102 Fed. 2d 651, the circuit court of appeals held that "the greatest value which could honestly be accorded to the system was that produced by the stock and bond method of valuation averaged over the five year period." That case involved the valuation of the South Dakota property of the plaintiff for the year 1935 when it was in receivership. *Chicago & North Western Railway Co.* v. *Eveland,* 13 Fed. 2d 442, is also relied upon, but we note that the court which decided the *Eveland case* subsequently observed: "The case cited by no means holds that earning capacity is to completely overshadow other factors. Indeed, in that very case other factors were given consideration such as that a $29,000,000 valuation was inferentially held fair on railroad property producing substantially no net earnings whatsoever." *Harris Trust & Savings Bank* v. *Earl,* 26 Fed. 2d 617, 618.

*State Railroad Tax Cases,* 92 U.S. 575, involved the valuation of three railroad properties in Illinois. It appeared that the capital stock of one of the carriers "is sunk and is of no value" and that its funded debt "has at present no market value." The argument was advanced that low earnings and low market valuation of the securities of the railroad company were conclusive as to the valuation of the property. The court answered (p. 606): "there re-

mains what is valued as worth over $2,600,000 of real and personal property, which, like all other property of individuals or corporations, ought to pay its proportion of the public burdens. There also remains the value of the franchise, which is not destroyed by the circumstance that the road does not pay interest on its debt. Does anybody believe that this debt is of no value,—that the holders of it attach no value to this franchise?" It is true, as plaintiff points out, that the court did say (p. 605) that: "when you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock. This would of itself be, perhaps, the fairest basis of taxation for the State at large, if all railroads were solvent and paid the interest promptly on their funded debt. But this has never been the case in Illinois." But the court added (p. 605): "it is doubtful if this happy state of affairs is likely to prevail soon in that or any other State of the Union. If taxes were assessable alone on the value of the capital stock and franchises of the corporation, cases might be found where these were worth nothing, and such companies would pay no tax even for their real estate and personal property.  *  *  *  But individuals do not escape taxation on their real and personal property because they are insolvent."

In our opinon the authorities do not warrant ignoring the physical value of railroad property in determining its assessed value under ordinary circumstances, nor do they indicate that an undue weight was given to that factor in this case. The two factors pressed upon us by plaintiff are not without deficiencies as yardsticks of value. In the case of ordinary property, the income which a particular

owner is able to realize from it is not considered relevant in determining value. (*Forest Preserve District v. Hahn,* 341 Ill. 599.) It is admissible here not because of its intrinsic reliability, but by necessity. Nor is it realistic to regard as conclusive the values which the securities market indicates. Many factors, unrelated to the values of particular property, may play a part in determining the price of securities.

Plaintiff's exhibits in this case show throughout the unreliable characteristics of the two value determinants upon which plaintiff insists. For example, plaintiff's net operating income for 1948 was $10,010,000; for 1949 it was $2,783,000. When those income figures are capitalized at six per cent, a decline in value of $120,450,000 in one year is indicated. In 1950 net operating income was $9,133,000 which, when capitalized, indicates an increase in value of $105,833,000 over 1949. For 1951, value, as indicated by capitalizing income of $7,224,000, declined from 1950 by more than $31,816,000. Using net stock and debt as the criterion, the value of the railway remained constant at approximately $139,000,000 during 1948 and 1949, but increased $14,000,000 from 1949 to 1950 and another $22,000,000 from 1950 to 1951.

Reproduction cost weighs heavily in the assessment of plaintiff's property because of the relatively poor earning record of the plaintiff in the five years prior to 1953. That earning record, which reflects competition from trucks, airplanes and private automobiles, is again reflected in the relatively low value of its securities. Other railroad companies whose earnings and security values are relatively high in proportion to their reproduction cost would have equal justification for urging that capitalized income and the market value of securities be excluded in determining assessed value.

We hold that the assessment need not be tied to the fluctuations of the securities market or the vicissitudes of

management, and that reproduction cost has not been given undue weight in determining the assessed value of plaintiff's property.

The plaintiff also contends that the assessment discriminates against its property in favor of that of other railroads assessed by the Department. This objection is based in large part on the fact that with many of the other railroads in Illinois reproduction costs form a smaller proportion of the figure obtained by averaging the three measures of value than is the case with plaintiff. This result of course follows from the fact that plaintiff's reproduction costs are relatively high as compared with earnings and security prices. But if the formula employed by the Department is permissible, as we have held it is, discrimination is not established by showing that its application bears more heavily on some taxpayers than on others. *Cf. Antioch Milling Co.* v. *Public Service Co.* 4 Ill. 2d 200, 208.

Plaintiff also appears to suggest that a discrimination has occurred with respect to the Department's practice in setting its final assessment at a figure which is lower than the figure produced by its formula. In plaintiff's case there was a reduction of $10,980,000, about 11 per cent. Forty-one of the other railroads received reductions which were larger percentagewise. The remaining lines received smaller reductions. The record does not disclose the basis for these reductions, either in plaintiff's case or in the case of other railroads. A difference not shown to be the result of caprice or intentional discrimination is not enough to invalidate the assessment. (*Cf. Department of Revenue* v. *Warren Petroleum Corp.* 2 Ill. 2d 483, 488.) Plaintiff points out that as a result of the various reductions the final assessment of thirty-seven of the lines is a figure approximately equal to, or less than, the figure which would have been obtained had the Department ignored reproduction cost in its formula. The implication, which is not expressly drawn by the plaintiff, is that the Department,

under the guise of making a reduction in assessments has in fact applied to railroads other than the plaintiff a formula based only on capitalized earnings and security prices. From what we have already said it is clear that this charge must be rejected. It is unsubstantiated in the record before us, and the reductions made by the Department may well rest on reasonable, though undisclosed grounds.

The judgment of the circuit court of Du Page County is reversed.

*Judgment reversed.*