St. Louis-San Francisco Ry. Co. *v.* Ark. Publ. Service Comm.

5-1273                                                    304 S. W. 2d 297

Opinion delivered July 1, 1957.

*George E. Bailey,* St. Louis, Mo.; *Edward L. West-brooke* and *Bernal Seamster,* for appellant.

*John R. Thompson, Rose, Meek, House, Barron & Nash, Stanley E. Price* and *W. Dane Clay,* for appellee.

Ed. F. McFaddin, Associate Justice. This appeal involves the ad valorem assessment of the St. Louis San Francisco Railway Company (hereinafter called "Frisco") for the year 1955. The Arkansas Public Service Commission[1] (hereinafter called "Commission") made the assessment (see § 84-606 *et seq.* Ark. Stats.); and Frisco appealed to the Pulaski Circuit Court (see Act No. 388 of 1953 as found in § 84-120 Ark. Stats. Cumulative Pocket Supplement). The Circuit Court entered its judgment; and Frisco appeals to this Court. We have three main questions; being extent of review, the valuation, and the ratio of assessment.

I. *Extent Of Review.* The first point is the extent of review in the Circuit Court of the assessment made by the Commission.[2] Prior to Act No. 388 of 1953 (see § 84-120 Ark. Stats. Cumulative Pocket Supplement), the applicable law was Act No. 191 of 1949, and it provided in Section 8 thereof that any person aggrieved by the findings of the Commission could appeal to the Circuit Court and the proceedings ". . . shall be tried *de novo* on the record made before the Commission." But in the Act No. 388 of 1953 the words "on the record made before the Commission" were deleted; so that the law now merely provides that there would be a *de novo* trial in Circuit Court.[3]

When we consider the entire matter of assessments and the power of the Courts over assessments, it is clear that this Act No. 388 of 1953 does not contemplate the kind of *de novo* trial in Circuit Court — in an appeal from the Commission — as one would have in a *de novo* trial in an appeal from a Justice of the Peace Court

---

[1] In this Court on motion of Frisco, and in order that all possible parties may be in the case, two newly created state agencies have entered their appearances, adopting and supporting the position of the Arkansas Public Service Commission. These two new agencies are the Arkansas Commerce Commission and the Arkansas Tax Assessment Coordination Department. (See Acts 132 and 234 of 1957.)

[2] In 2 Arkansas Law Review, page 67, there is an enlightening article entitled, "Judicial Review of Findings of the Arkansas Public Service Commission."

[3] Merely for information purposes, attention is called to Act No. 234 of 1957, in Section 6 of which the words are used: ". . . *de novo* on the record made before the respective Commission."

to the Circuit Court. The Circuit Court does not sit as an assessment or appraisal body when it hears the appeal from the Commission. In *Cook* v. *Surplus Trading Co.,* 182 Ark. 420, 31 S. W. 2d 521, we said:

"It is not within the province of the Courts to assess property, . . . Courts can only review the assessments made by the assessing officers, and have no power under our Constitution and laws to make the assessments."

The purpose of any Court appeal from an assessment or equalizing agency is to see that the assessment is neither erroneous in figures, nor arbitrary in measuring, nor confiscatory in results. In 84 C. J. S. 1123, the effect of the holdings is summarized in this language: "On an appeal from an assessment, the Court will not disturb the decision of the assessors unless it is clearly erroneous, or, unless, as required by Statute, the assessment is manifestly excessive, fraudulent, or oppressive. Ordinarily the Court has no jurisdiction to make a tax assessment, and if it finds error, it should remand the case to the assessing body for further proceedings in accordance with the Court's findings."

On appeal to the Circuit Court in this case, the record before the Commission was filed; and Frisco, as the objector, had the burden of showing that the assessment was erroneous in figures, arbitrary in measurement, or confiscatory in result. In its judgment, the Circuit Court found certain items misplaced or overvalued, and stated as to what extent the original assessment was a mistake in figures. It found that there was nothing arbitrary in the method of determination, nor confiscatory in the result. The Circuit Court remanded the matter to the Commission to make the proper corrections. This was the correct procedure because our Statute, then effective, (§ 84-611 Ark. Stats.) directed the *Commission* to certify to the assessor of each County affected, in which is located any property of the carrier, the correct amount of the assessment in order that the taxes shall

be extended and collection made, as in cases of other property.[4]

II. *Valuation Of Frisco's Property.* From the judgment of the Circuit Court Frisco appeals to this Court, claiming both mistake in figures, arbitrariness of the "yardstick," and confiscatory results of the valuation determined; and we proceed now to consider the matter of valuation. In this Court the Commission has submitted a concise tabulation which the Commission claims is Frisco's assessment, as made by the Commission and as modified by the Circuit Court judgment. We copy this tabulation:

I.  Cost Value:

|     |     |     |
| --- | --- | --- |
| (A) | $449,827,713.00 | RCN-D[5] as of 1/1/54 |
| (B) | 15,812,377.00 | Net Plant Additions in 1954 |
| (C) | 465,640,090.00 | RCN-D as of 1/1/55 |
| (D) | 10,605,882.00 | Working Capital |
| (E) | 9,274,023.00 | Materials and Supplies |
| (F) | 485,519,995.00 | Cost Value |

II.  Capitalized Earnings Value:

|     |     |     |
| --- | --- | --- |
| (G) | 16,674,770.00 | 5-year Average Net Operating Income |
| | 6% Capitalization | |
| (I) | 277,912,867.00 | Capitalized Earnings Value |

III.  Stock and Debt Value:

|     |     |     |
| --- | --- | --- |
| (J) | 267,487,118.00 | Stock and Debt as of 1/1/55 |
| (K) | 17,717,051.00 | Non-Utility Property |
| (L) | 249,770,067.00 | Stock and Debt Value |

---

[4] Some time ago the parties stipulated in this Court that, until the final decision in this case, Frisco might pay the taxes on a valuation of $5 million for the year 1955, conditioned that as soon as this case was finally decided, any additional tax and interest thereon, if any, would be promptly paid by Frisco. This will be covered in our directive contained in the section entitled "Conclusion".

[5] "RCN-D" means "Reconstruction New Less Depreciation".

IV. Recapitulation:

$$485,519,995.00$$
$$277,912,867.00$$
$$249,770,067.00$$

(M) 3/1,013,202,929.00

(N)  337,734,310.00  System Value
(O)  10.33% Arkansas Ratio to System
(P)  34,887,954.00  Arkansas Value
(Q)  20% Assessment Ratio
(R)  6,977,591.00  Arkansas Assessment

It will be observed that each item is identified by letter; and later we shall explain and discuss the controversy on some of these items, likewise making reference to alphabetical identification. But before considering the matter of figures, there is the question of the "yardstick": by which is meant the factors that the Commission used to determine the valuation of Frisco's properties. The Commission considered three factors, being (I) cost value (lines A to F), (II) capitalized earnings value (lines G to I), and (III) stock and debt value (lines J to L). These three factors were given equal weight in determining the system value because in the recapitulation (IV), the three values were totalled and divided by three. This use of cost value, capitalized earnings value, and stock and debt value, is what we refer to as the "yardstick." Our applicable statute on method of valuing properties, as in this case, is § 84-606 Ark. Stats., and the germane portions of it provide:

"The valuation of the property of all . . . corporations required by law to be assessed by the Commission shall be made upon the consideration of what a clear fee simple title thereto would sell for under conditions under which that character of property is usually sold. As evidence tending to show what this would be the Commission, is so far as other evidence and information in its possession does not make it appear improper or unjust for it to do so, shall ascertain as nearly as it can

and consider the market or actual value of all outstanding capital stock and funded debt and the income of such companies, and also the estimated investments and valuation of said property as set up by the officers or agents of such companies as a basis for the adjustment of rates or charges for service to the public by such companies, and such other information as to value the Commission may obtain. (Acts 1927, No..129, § 18 p. 400; Pope's Dig., § 2044).

The Statute requires the Commission to assess the property on what a ". . . clear fee simple title thereto would sell for under conditions under which that character of property is usually sold." Then, as evidence to aid the Commission in determining the "clear fee simple title" value, the Commission, if it is not improper or unjust to do so, shall consider (a) the market or actual value of outstanding capital stock and funded debt and the income of such companies, and (b) the established investments and valuation of the properties, and (c) such other information as to value as the Commission may obtain. These factors — cost value, capitalized earnings value, and stock and debt value — have been used by the Commission in this case (and the record shows have been used by the Commission in many other cases) as an aid, and as evidence of the actual clear fee simple title value, which is the ultimate desire in ad valorem assessments.

Is this method — of cost value, capitalized earnings value, and stock and debt value — a fair "yardstick" to determine the system value of Frisco's property? Frisco claims that the cost value is overweighted and that it should be given little, if any, consideration; and Frisco also claims that some of the other factors in the "yardstick" have been overemphasized. We hold that the "yardstick" used by the Commission in determining the system value of Frisco in this case is fair and not arbitrary. It is undenied that such a "yardstick" has been used by the Commission heretofore, and that such a "yardstick" is used in other states. One such case is that of *Chicago & Northwestern Ry. Co.* v. *Department*

*of Revenues,* 6 Ill. 2d 278, 128 N. E. 2d 722, decided by the Supreme Court of Illinois in 1955, with *certiorari* denied by the U. S. Supreme Court, 251 U. S. 950. This is not the only "yardstick" that could be used, but it is fair and equitable. As Mr. Justice BUTLER said, in 1934, in *Rowley* v. *Chicago & Northwestern Ry. Co.,* 293 U. S. 102, 79 Law Ed. 222, 55 S. Ct. 55, in discussing the assessment of railway properties by the State of Wyoming:

"The ascertainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rule. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and property may be taken into account to guide judgment in determining what is the money equivalent — the actual value — of the property."

We come then to the specific figures contained in the foregoing tabulation. Line (A) is the "Reproduction Cost New Less Depreciation," and is a figure furnished the Commission by the Interstate Commerce Commission. Line (B) — the plant addition figure — was furnished the Commission by Frisco. Lines (D) and (E) are self explanatory. So, the total of the cost value shown in line (F) is correct.

(G). In the tabulation the figure in line (G) is $16,674,700 as the "5-year average Net Operating Income." Frisco challenges this figure because it is the income *before the deduction of income tax.* The Commission concedes that this figure is before any deductions for income taxes. If there should be made a deduction for income taxes, the figure in line (G) would become $14,393,207. The question, therefore, is whether the 5-year average Net Operating Income should be listed *before* or *after* the payment of income tax. It must be borne in mind that the Commission was considering the "Capitalized Earnings Value" to aid in determining the clear fee simple value of the Frisco system. In-

come tax is calculated on *net earnings*. The tax may be great or small, depending on the needs of the taxing power. Prior to World War I, income tax was either non-existent or negligible; there was a period between World War I and World War II when the tax was small; at present the tax is large. Deduction of income tax is not an aid in determining "Capitalized Earnings Value" because the invested capital has made an earning regardless of the income tax rate. This is an *ad valorem tax* case and not an *income tax* case. It is not a question of what dividends go to the stockholders, but what is the "Capitalized Earnings Value." So we see no merit to Frisco's claim that the income tax should be deducted *before* listing the operating income.

(H)   In the tabulation, in line (H) the figure of 6% is used by which to capitalize the earnings value. Frisco complains of this 6% figure and says it is too high; but we consider 6% to be a fair figure. It was stated by the Commission's witnesses, and without serious denial by Frisco, that the Commission had used this same figure for a number of years and that other Commissions and tax assessing bodies used the same figure. Certainly it cannot be said that the Commission acted arbitrarily in using the 6% figure for capitalization in this case.

(K)   In the tabulation, line (K) contains the figure of $17,717,051 as a deduction for non-utility property. Section 84-610 Ark. Stats. requires that all property — owned by such a taxpayer as Frisco in this case — not used in the utility operation shall be assessed by the County Assessor of the County wherein such property is located; and § 84-613 Ark. Stats. requires that the Commission, in assessing the true value of such a utility as Frisco, shall deduct the value of all property ". . . not used in the utility operation of the Company." Therefore, the Commission undertook to exclude the value of the non-utility property of Frisco. At the time the Commission made the assessment, the latest report made to it by Frisco was one made in early 1954 (as required by § 84-601 and § 84-603 Ark. Stats.); and that report showed the value of Frisco's non-utility prop-

erty to be $17,717,050, which is the same figure shown in line (K) of the tabulation. Frisco claims that it made a mistake in its 1954 return and that the correct figure that should have been in the return was $63,611,641. But when an analysis is made of Frisco's larger figure, it shows that it was not a mere mistake by Frisco, but that the larger figure was based on items that appear to have been an afterthought. For instance, in the larger figure of $63 million plus now claimed by Frisco, there is the stock market quotation of December 31, 1954 of some stock owned by Frisco in the New Mexico and Arizona Land Company. That stock market quotation could not have been in existence when Frisco made its return to the Commission in early 1954. Also, in Frisco's larger figure of $63 million plus, there is included an item of temporary cash investments in excess of $11 million. These cash investments might have been used by Frisco as asset available for use in its public utility operations. At all events, we cannot say that the Commission made a mistake or was arbitrary, in using in line (K) the identical figure furnished by Frisco to the Commission, rather than a figure urged by Frisco much later. So, we find no error in the figure used by the Commission in line (K) of the tabulation.

(O) In discussing the "yardstick," we said that line (N) was the total system value of Frisco. The next step of the Commission was to determine the portion of the total system value that might be considered as being in Arkansas.[6] In line (O) of the tabulation there is the figure of 10.33% as the Arkansas ratio to the system; and Frisco challenges that figure and in-

---

[6] Section 84-610 Ark. Stats. says in part: "The Commission shall then ascertain and fix the value of the total utility operating property, tangible and intangible, in this State, by taking such proportion of the true market or actual value of the entire operating property, tangible and intangible, of such company, actually used in its public utility business, as its total lines within this State bear to the total lines both within and without this State, or as its total receipts or income from operation within this State bear to its total receipts or income from operation both within and without this State, or by using such other recognized method, or combination of methods, as will, in the judgment of the Commission, result in a just and equitable apportionment to this State of its due proportion of the value of the total utility operating property."

sists that it is too large. In view of the state of the record before us and our holding on the Extent of Review (as discussed in Topic I, *supra*), we conclude that Frisco is correct in this contention. The Commission, in making its determination of the tax assessment of Frisco, fixed the "Arkansas ratio to the system" separately on each of the three principal items. That is to say: on "I. Cost Value" the Commission fixed the "Arkansas ratio to the system" to be 10.40%; on "II. Capitalized Earnings Value" the Commission fixed the "Arkansas ratio to the system" to be 9.14%; and on "III. Stock and Debt Value" the Commission fixed the "Arkansas ratio to the system" to be 9.71%. The average of these percentages is 9.75% and not 10.33%. When the case went to the Circuit Court, that tribunal held that the "Arkansas ratio to the system" should be determined after the total system value had been found (as in Line N, *supra*) rather than on each of the three separate items. It is true that in the Circuit Court hearing the Commission attempted to show additional factors to be considered in fixing the "Arkansas ratio to the system," some such being: car and locomotive miles, traffic units, traffic miles, etc.[7]; and the Commission now claims that with these other factors the percentage should be 10.33% rather than 9.75%. But under our holding in Topic I, *supra* (on the Extent of Review), it is clear that the hearing in the Circuit Court was not for the purpose of allowing the Commission to have the Circuit Court make an *increase* in assessment: rather the hearing in the Circuit Court was for the purpose of allowing Frisco to show either that the assessment was erroneous in figures, arbitrary in measurement, or confiscatory in result. Under such circumstances, the Commission cannot now justify its claim that Line (O) should be 10.33%. Instead, the figure in Line (O) as the "Arkansas ratio to the system" should be 9.75%, which is

---

[7] We are not holding that these factors could not have been considered by the Commission originally: we are merely holding that these factors could not be brought into the Circuit Court hearing for the first time in order to thereby *increase* the percentage already fixed by the Commission.

the average of the figures used by the Commission in making the assessment. This change from 10.33% to 9.75% will reflect a difference in Lines (P) and (R) of the tabulation. The correct figures for Lines (P) and (R) will be stated in the paragraph of this opinion entitled ''Conclusion.''

To summarize: we have considered, by reference to lines in the tabulation, all of the lines (A) to (O), inclusive, that have been challenged by Frisco seriously enough to justify discussion; and we have approved all lines down to Line (N) and now change Line (O) to 9.75%.

III. *Assessment Ratio.* Leaving Lines (P) and (R) for the portion of this opinion entitled ''Conclusion,'' we come to Line (Q) of the tabulation which showed the assessment ratio at 20%; and this figure is so seriously challenged by Frisco that we have assigned it a topic heading. Property in Arkansas is not assessed at its actual value but only at a percentage of the actual value; and in line (Q) of the tabulation the Commission determined that the property of Frisco in Arkansas would be assessed at 20% of its actual value. Frisco says that other property in Arkansas is not assessed so high, and that 12.32% is correct instead of 20%. Section 84-714 Ark. Stats. provides that the Commission shall sit as the State Board of Equalization in each year for the purpose of equalizing the ''taxable valuation'' of all property. Such Board examines and compares the returns from the several counties, hears witnesses, and makes investigations ''. . . so that all the taxable property throughout the State shall be assessed uniformly . . . at such percentum thereof as has been duly certified by the Commission.'' Section 84-103 (c) requires the Commission to certify to each County in the State in advance of the assessing period ''. . . a certificate showing the percentum of true and full market or actual value that it has used, or will use, in valuing for taxation for that year the property the Commission is required to assess.'' The evidence

in this case shows that the Commission had certified 20% of the true or actual or market value as the assessment figure that the Commission had used and would use; and the County assessing authorities were required to use the same figure in their assessments.[8]

To justify its claim that the 20% as used by the Commission is too high and that the correct figure should be 12.32%, Frisco offered in evidence its Exhibit Q, being a document of twenty-five pages, dated March 1, 1956, and purporting to be a "Report of Committee to study ratio of 1955 Arkansas ad valorem property assessments to 1954 real estate sales."[9] This report is a very interesting document, but even if sufficiently authenticated to constitute evidence—a point we need not decide—it is nevertheless only a sample check or a series of spot checks of a limited number of ad valorem property assessments, as compared to the consideration for the sale of such property as disclosed either by the Federal stamps on the deeds or the recited consideration. Certainly such a study of a limited number of transactions cannot prove that all transactions in the State would show that the property was only assessed at 12.32% of its value. Neither can this study irrefutably prove (a) that the Commission was in error in fixing 20% as the amount for which it assessed the properties it was required to assess, or (b) that the various County Assessors disobeyed the Statute and failed to assess the properties in their Counties at the figure the Commission had certified. The witness, Walter P. Hinton, Jr., who was Director of the Assessment Coordination Division of the Arkansas Public Service Commission, stated that under Act No. 153 of 1955 the State of Arkansas was attempting a complete ratio study and

---

[8] The witness, Earl Berry, who is Director of the Tax Division of the Arkansas Public Service Commission, testified that the 20% figure was used in this case because the Commission, under its order of December 18, 1954, had certified 20% of the true market value of the property as the percentage to be used in assessing.

[9] This report was made by and to the Missouri-Arkansas Association of Tax Representatives, which is an association composed of the tax representatives of various utilities, all of whom are interested in seeing that their property is not over-assessed.

that it would not be completed until the latter part of 1957. Until a complete study is shown to have been made, we think it would be improper to allow a partial study to refute the duty of the local assessing authorities to assess at the figure certified by the State Commission.

We recognize that obtaining a fair assessment of property has been a serious problem in this State for many years; but we know that considerable headway has been made toward more equitable assessments. Act No. 153 of the Legislature of 1955 shows the labor that the State is undertaking in this regard;[10] and in Section 4 of that Act the same figure of 20% is used. Some classes of property in Arkansas are assessed at more than 20%; other classes are assessed at less than 20%; but the State is striving for a 20% figure. In this case Frisco has failed to show either that the Commission was in error in fixing the figure at 20%, or that the said figure was arbitrary, or that the said figure would result in confiscation.

## CONCLUSION

The Commission has cross appealed, complaining of certain rulings of the Circuit Court; but in approving, as we have, Lines (A) to (N) of the tabulation, we have thereby disposed of the cross appeal.

We come now to Lines (P) and (R) of the tabulation. These must be changed because of the change made in Line (O) from 10.33% to 9.75%. Here are the concluding lines of the tabulation as revised and corrected by this opinion:

(N) $337,734,310.00    System Value
(O)              9.75%  Arkansas Ratio to System
(P)    32,929,095.00    Arkansas Value
(Q)              20%   Assessment Ratio
(R)     6,585,819.00    Arkansas Assessment

[10] Some of our cases arising because of this Act, or other tax assessing acts, are *Latham* v. *Hudson*, 226 Ark. 673, 292 S. W. 2d 252; and *Strawn* v. *Campbell*, 226 Ark. 449, 291 S. W. 2d 508.

This revised tabulation shows the Arkansas assessment of Frisco for 1955 to $6,585,819. Frisco has failed to show that such figure is either erroneous, or arrived at by an arbitrary method, or would result in confiscation. Therefore, we determine that figure to be correct, and we remand this case to the Circuit Court with directions to remand to the Commission to use the said figure and to take all steps for the Arkansas collecting agencies to collect the tax and interest from Frisco based on said figure. Interest on the balance of the tax due by Frisco will be calculated at 6% from November 1, 1956 until paid; and if not paid within thirty days after the determination of the balance actually due by the divisions, then the full statutory penalty, interest and costs will attach to said balance, the same as for delinquent taxes. The costs of this case are assessed against the appellant.

GEORGE ROSE SMITH, J., not participating.