178 So.2d 355 (1965)
FLORIDA EAST COAST RAILWAY COMPANY, a corporation, Appellant,
v.
Ray E. GREEN, Comptroller of the State of Florida, Richard W. Ervin, Attorney General of the State of Florida, and J. Edwin Larson, Treasurer of the State of Florida, as and constituting the Railroad Assessment Board of the State of Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellee.
No. F-380.
District Court of Appeal of Florida. First District.
September 2, 1965.
Rehearing Denied October 8, 1965.
*356 J. Lewis Hall, Tallahassee, for appellant.
Earl Faircloth, Atty. Gen., and Joseph C. Jacobs, First Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Judge.
The plaintiff in a suit to declare illegal the assessment of its operating properties in Florida by the State Railroad Assessment Board has appealed from a final decree entered by the Circuit Court for Leon County, dismissing the plaintiff's second amended complaint and its supplemental complaint.
The propriety of such dismissal of the said complaints is the issue on this appeal.
By its second amended complaint the plaintiff seeks relief from an alleged illegal assessment for taxation for the year 1961 of its railroad operating properties. The said Board placed a value of $50,735,661.00 upon those properties, which, the plaintiff avers, had on the critical date (January 1, 1961) a full cash value of only $20,609,959. The grounds for relief are two-fold: (a) over-valuation and (b) discrimination against the plaintiff as compared to the assessment of other major railroads operating in Florida.
In its supplemental complaint the plaintiff seeks the same relief on the same grounds with reference to the Board's valuation of the plaintiff's said properties for the year 1962 at $50,730,387, the plaintiff alleging that on the critical date (January 1, 1962) its said properties had a full cash value of only $15,599,481.
The plaintiff filed its original complaint in the said Circuit Court on August 28, 1961, to which complaint the defendants timely filed a motion to dismiss. The court entered an order denying the said motion, and the defendants took an interlocutory appeal therefrom to our court. In that appeal we entered our opinion and judgment affirming the said order, as reported in Green v. Florida East Coast Railway Co., Fla., 141 So.2d 326 (1962). In our said opinion we took care to emphasize the fact that we were therein ruling upon "allegata" and not "probata" and that we were not passing upon the merits of the assessments involved, saying:
"It should be clearly understood that neither the Circuit Court nor this court in sustaining the plaintiff's complaint is ruling on the merits or passing upon the validity of the formula utilized by the Board in its valuation of the plaintiff's property." (141 So.2d at page 327.)
In the present appeal, of course, unlike the situation in the earlier interlocutory appeal, we must pass upon the "probata" and the merits of the appeal.
After the entry of our judgment in the interlocutory appeal and the remand of the cause to the Circuit Court, the plaintiff filed therein an amended complaint, which the said court dismissed on the motion of the defendants. In April, 1963, the plaintiff filed its second amended complaint and later its supplemental complaint, to which complaints the defendants filed their answers. The allegations in the said two complaints and the answers thereto thus framed the issues to be tried by the Circuit Court.
Proofs before the Circuit Court consisted of 66 interrogatories, with the answers thereto, voluminous documentary evidence, and extensive testimony taken before the court.
*357 Based upon the above pleadings, the interrogatories with answers thereto, and the testimony and other evidence, the Circuit Court on March 27, 1964, entered the final decree appealed from herein, dismissing the said second amended complaint and the supplemental complaint at the plaintiff's cost.
If we were to detail in this opinion the pleadings, the interrogatories and answers thereto, the testimony, and the evidentiary documents before the Circuit Court, as reflected in the five volumes of the record-on-appeal, this opinion would likely consume most of the pages of a volume of the Southern Reporter, and such a massive opinion would serve no useful purpose. Consequently, we shall devote our opinion mainly to what we consider to be the heart of this appeal.
The pleadings and evidence which were before the Circuit Court disclose that the defendants assessed the plaintiff's railroad properties for tax purposes by first applying a preliminary formula in which equal weight is given to each of the following three factors: (1) the cost of reproduction less 20 percent for obsolescence; (2) the five-year average of the stock and debt of the railroad; and (3) the five-year average of the net operating income of the railroad capitalized at six percent.
Under the assessment procedure utilized by the defendants, the members of the Board, the value reached by the use of the foregoing formula is then subjected to what is called a "judgment factor," which consists of any adjustment deemed by the Board to be proper in the light of the conditions peculiar to the particular railroad being assessed.
For 1961 the defendants applied the said formula to the plaintiff's properties and reached a formula value of $65,366,000, reduced this value by the "judgment factor" in the amount of $14,630,339 and arrived at the assessed value of $50,735,661. Similarly, for 1962 the defendants reached a formula value of $59,124,000, reduced this value by the "judgment factor" in the amount of $8,393,613, and arrived at the assessed value of $50,730,387.
The main force of the plaintiff-appellant's argument in this appeal seems to be directed against the defendants' consideration of the first element in the preliminary formula above described  the cost of reproduction less 20 percent for obsolescence.
The "cost of reproduction" referred to in this first element of the preliminary formula is the Interstate Commerce Commission's annual estimate of the cost of reproduction of each railroad, which includes an allowance for depreciation so as to produce an annual estimate of the value of the railroad in its actual existing condition, based upon the current cost of reproduction reduced by the actual physical depreciation which the railroad properties have sustained. This cost of reproduction is then reduced by the Board by 20 percent for the purpose of making an allowance for the obsolescence of railroads as a means of transportation and the obsolescence of the property employed by reason of technological advances.
Briefly stated, the principal objection interposed by the plaintiff to the use of reproduction cost in evaluating its properties, is that the evidence shows that it had made a large and unnecessary investment that represents a very substantial part of the reproduction cost; and that the plaintiff had lost a considerable portion of its revenue because of the Cuban crisis.
At a hearing before the chancellor the plaintiff produced three expert witnesses who testified that the value of the plaintiff's operating properties on the critical dates (January 1, 1961, and January 1, 1962) was much lower than the assessed values reached by the defendants. The highest valuation of such witnesses for 1961 was $30,577,000, and the highest for 1962 was $24,500,000. Each of these three witnesses testified, however, that he gave no consideration to the cost of reproduction as an element of value, but considered only two basic factors: the capitalization of earnings *358 and the market value of stocks and debts. The plaintiff also produced at the hearing evidence of the cost and the present lack of usefulness of the double track over much of its lines and the cost and obsolescence of shops, water stations, and other facilities.
Therefore, the first question presented for our determination in this appeal is whether in his final decree the chancellor correctly held that the defendants lawfully gave substantial consideration to the cost of reproduction, reduced by depreciation and obsolescence, in evaluating the plaintiff's railroad properties.
Highly respected judicial authority appears to support the inclusion of the cost of reproduction as one of the factors properly to be considered in evaluating railroad properties for taxation purposes. In addition, according to an uncontradicted exhibit introduced in evidence by the defendants, the taxing authorities of 31 of our sister states give some consideration to the cost of reproduction, "book value," or "initial cost," although they vary in the weight which they feel should be given to such a factor.
The leading case in the nation on the subject of the propriety of considering reproduction cost in evaluating railroad property appears to be Chicago and N.W. Railway Co. v. Department of Revenue, 6 Ill.2d 278, 128 N.E.2d 722 (1955), cert. den. 351 U.S. 950, 76 S.Ct. 844, 100 L.Ed. 1474, reh. den. 352 U.S. 859, 77 S.Ct. 22, 1 L.Ed.2d 69, in which the Supreme Court of Illinois was confronted with a question very similar, if not identical, to that before us in the present appeal.
In the just-cited case the Illinois Department of Revenue, in seeking to ascertain the full cash value of the railroad in question, first took the average of the railroad's net earnings for the preceding five-year period and then capitalized this average amount at six percent; determined the market value of the railroad's outstanding bonds and other indebtedness, and of its shares of stock; and determined the reproduction cost, less depreciation, of the railroad property as computed by the Interstate Commerce Commission. In reaching its assessment valuation the department averaged these three factors and then reduced this average figure by taking into consideration adverse trends, worsened business conditions, higher wages, competition, and the like. The trial judge found that the assessment was excessive and, in setting it aside, found that replacement cost was unreliable as a measure of the value of the said railroad's operating property.
On appeal from the said order, the Supreme Court of Illinois first recognized that railroad property is difficult to evaluate and that the process of such evaluation has not been subjected to rigid rules. The court then recognized the doctrine laid down by the United States Supreme Court in Great Northern Railway Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532, that in determining the amount of an assessment, a railroad assessment board is not bound by any formula, rule, or method, but is free to consider all pertinent facts, estimates, and forecasts, and to give to them such weight as reasonably they might be determined to have. Finally, the Supreme Court of Illinois held that the physical value of property shown either by reproduction cost or historical cost was an important factor in fixing valuation for taxation purposes and that "reproduction cost has not been given undue weight in determining the assessed value of plaintiff's property."
In the more recent case of People ex rel. Hillison v. Chicago, Burlington and Quincy Railroad Co., 22 Ill.2d 88, 174 N.E.2d 175 (1961), the Supreme Court of Illinois again approved an evaluation formula very similar to that in the case at bar, saying:
"The record shows that the Department, in assessing defendant's railroad property, initially computed the average *359 of three factors which this court has upheld as properly bearing on the valuation of railroad property. Chicago & North Western Railway Co. v. Department of Revenue, 6 Ill.2d 278, 128 N.E.2d 722. These three factors are (1) capitalized value of earnings, (2) market value of stock and debt, and (3) reproduction cost, less depreciation, of the operating property located in Illinois. The average of these factors resulted in an initial figure of $205,153,000. Thereafter, in the exercise of its `judgment factor,' the Department arrived at an assessment of $147,000,000 for defendant's railroad property for 1958. * * *"
In many other cases the highest courts of other states have upheld as fair and equitable a yardstick similar to that used in Florida in evaluating railroad properties. For example, the Supreme Court of Arkansas held in St. Louis-San Francisco Railway Co. v. Arkansas Public Service Commission, 227 Ark. 1066, 304 S.W.2d 297 (1957):
"Is this method  of cost value, capitalized earnings value, and stock and debt value  a fair `yardstick' to determine the system value of Frisco's property? Frisco claims that the cost value is overweighted and that it should be given little, if any, consideration; and Frisco also claims that some of the other factors in the `yardstick' have been overemphasized. We hold that the `yardstick' used by the Commission in determining the system value of Frisco in this case is fair and not arbitrary. It is undenied by the Commission heretofore, and that such a `yardstick' is used in other states. One such case is that of Chicago and North Western Ry. Co. v. Department of Revenues, 6 Ill.2d 278, 128 N.E.2d 722, decided by the Supreme Court of Illinois in 1955, with certiorari denied by the U.S. Supreme Court, 351 U.S. 950, 76 S.Ct. 844, 100 L.Ed. 1474. This is not the only `yardstick' that could be used, but it is fair and equitable."
Again, the Supreme Court of Nebraska in Chicago, Burlington & Quincy Railroad Co. v. State Board of Equalization and Assessment, 170 Neb. 77, 101 N.W.2d 856 (1960), upheld a yardstick similar to that used in Florida, saying:
"Appellee determined the actual value, referred to by it as system value, of the railroad property of appellant by a consideration of three factors: 5-year, 1955-1959, average value of the stocks and bonds; 5-year, 1954-1958, average of net operating income capitalized at 6 percent; and investment in transportation property less depreciation. Each factor was given equal weight and this resulted in an average value of the railroad property of appellant of $451,177,807. This was the actual value of the railroad of appellant for assessment purposes as determined by appellee. * * *"
All things considered in the light of the law and justice as discussed above, it is our opinion that the fundamental rule applicable to the evaluation of railroad properties is that found in the following language used by the United States Supreme Court in Rowley v. Chicago & Northwestern Railway Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222 (1934), in discussing the assessment of railroad properties by the State of Wyoming:
"The ascertainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rule. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and properly may be taken into account to guide judgment in determining what is the money equivalent  the actual value  of the property."
This language was relied upon and quoted with approval by the Illinois Supreme Court in the Chicago and N.W. Railroad *360 Co. case, supra, and by the Arkansas Supreme Court in the St. Louis-San Francisco Railway Co. case, supra.
Upon the basis of the foregoing authorities we have reached the conclusion that reproduction cost has not been given undue weight by the defendants in evaluating the plaintiff's railroad properties for 1961 and 1962. If they had used reproduction cost as the sole yardstick, or even as the major factor, a serious question might arise as to the validity of the evaluation in view of the plaintiff's contention concerning the lack of usefulness of much of its properties, such as the double track over most of its lines. In evaluating those properties, however, the defendants, as stated above, utilized the cost of reproduction as only one of three factors in the preliminary formula, each factor being given equal weight. Furthermore, the "cost of reproduction" used in the Interstate Commerce Commission annual estimate was reduced by 20 percent by the defendants for the purpose of making an allowance for the obsolescence of railroads as a means of transportation and an allowance of the obsolescence of the property employed by reason of technological advances. Finally, the defendants substantially reduced the figure thus arrived at by applying the above-mentioned "judgment factor," such reduction being $14,630,339 for 1961 and $8,393,613 for 1962 in the assessment of the plaintiff's properties.
Under these circumstances we are not prepared to hold and cannot hold that the defendants' valuations of the plaintiff's properties for 1961 and 1962 were invalid for excessiveness as a matter of law. This conclusion is based not only on the authorities and considerations discussed above, but also upon our concept of the limitations of the power of the courts to review the actions of taxing officials charged by law with the responsibility of evaluating properties for tax purposes. Those limitations are ably delineated in the following two paragraphs in the chancellor's final decree, which we quote with approval:
"It is also appropriate to observe that, in cases of this sort, the judicial inquiry is limited to an ascertainment of the legal validity of the actions of other public officials. Judges are not selected because of their abilities as appraisers of property or their capacity to predict the economic future of business ventures based upon past experience and an evaluation of present conditions. Judges may not, therefore, substitute their judgment for that of taxing officials charged with the responsibility to ascertain the value of property for purposes of taxation.
"On the other hand, taxing officials are bound by the law and if they do not proceed in accordance with the essential requirements of law, or if they abuse their discretion and arbitrarily or capriciously fix an excessive value upon the property of one taxpayer or wilfully discriminates against one taxpayer, it is the duty of the courts to afford that taxpayer appropriate relief."
The same concept of the limitations of judicial review in such cases was recognized by the Supreme Court of Florida in Louisville & N. Railroad Co. v. Amos, 98 Fla. 350, 123 So. 745 (1929), a suit against the State Comptroller challenging the assessment of certain railroad property as excessive and discriminatory. The assessment had been made by the State Treasurer, the Attorney General, and the said State Comptroller, the officials who now comprise the Railroad Assessment Board. In affirming the final decree of a circuit court refusing to disturb the challenged assessment, the Supreme Court held:
"We have seen that the good faith and validity of the actions of taxing officers will be presumed. This rule is applicable here to the actions of the defendant challenged in this suit. It is also well settled that, where equity may *361 properly be invoked to restrain the collection of taxes on the ground of the invalidity of the assessment, the complaint must make a complete case for equitable relief by excluding every reasonable hypothesis of a legal assessment against him. Roberts v. American Nat. Bank, 94 Fla. 427, 115 So. 261. The law contemplates that assessing officers shall make just, fair, and impartial valuations of property for assessment purposes. And their valuations, when made in the manner provided by law and with practical regard to existing conditions and circumstances of character, locality, use, and other matters that may affect values, will in general not be disturbed by the courts, unless it appears that by intentional, unjust discrimination, or by systematic, arbitrary action, there results manifest and gross inequality or injustice in fixing values, abstractly or relatively, showing an abuse of authority to determine values for assessment purposes. German-American Lbr. Co. v. Barbee, 59 Fla. 493, 52 So. 292; Camp Phosphate Co. v. Allen [77 Fla. 341, 81 So. 503], supra; City of Tampa v. Palmer [89 Fla. 514, 105 So. 115], supra; Chicago Great Western R.R. Co. v. Kendall, 266 U.S. 94, 45 S.Ct. 55, 69 L.Ed. 183. The duty to bear a just share of taxation, justice to other taxpayers, and the requirements of government, would make it inequitable to give relief from all taxation, because there may be some inequality in assessment valuations."
We now turn to the second principal contention made by the appellant in this appeal  that the defendants' assessments of its properties for 1961 and 1962 tax purposes are discriminatory as compared to its assessments of the properties of other major railroads operating in Florida.
According to the plaintiff's complaints, the major railroads in question are the Seaboard Air Line Railroad, the Atlantic Coast Line Railroad, and the Louisville & Nashville Railroad. The evidence before the chancellor, however, did not cover the lastnamed railroad. In its said complaints the plaintiff alleges that, while the properties of the other railroads are assessed "at approximately their full cash value as required by law," the valuation placed on the plaintiff's railroad is "grossly in excess of its full cash value."
The evidence before the chancellor shows the following with reference to the charge of discrimination:
For 1961 the tentative value of the Seaboard Air Line's property in Florida under the above-described preliminary formula was $133,580,000, which the defendants reduced by $42,825,000 by applying the judgment factor, and reached an assessment value of $90,755,000. For 1962 such tentative value was $129,528,000, which was reduced by the judgment factor by $38,767,000, reaching an assessment value of $90,767,000.
As to the Florida property of the Atlantic Coast Line Railroad for 1961, that property was tentatively valued under the said formula at $96,178,000, which amount was increased by $11,337,000 by the defendants in applying the judgment factor, reaching an assessed value of $107,515,000. For 1962 the said property was tentatively valued under the formula at $98,977,000, which was again increased by the defendants through the judgment factor, reaching an assessed value of $106,996,000.
At first consideration of the foregoing figures, any discrimination shown thereby would seem to be against the Atlantic Coast Line Railroad and in favor of the plaintiff and the Seaboard Air Line Railroad, because of the way in which the defendants applied the judgment factor, substantially increasing the Atlantic Coast Line Railroad's value and substantially reducing the value of the properties of the latter two railroads, after arriving at the formula values. The record before us does not disclose the reason why the defendants applied *362 the judgment factor in this way, but the chancellor in his final decree suggests the following as the possible reason: "The Seaboard and Coast Line are both interstate lines and such things as variations in the percentage of unproductive branches, car loadings, gross receipts, car miles, passenger miles, and seasonal fluctuations of business as between the states in which they operate might well justify broad use of the judgment factor in their assessment."
The properties of the Atlantic Coast Line Railroad were, as shown above, assessed at substantially more than the value arrived at through the application of the preliminary formula used by the defendants, which fact is certainly not evidence of discrimination against the plaintiff, whose properties were assessed substantially lower than the value that would be reached through a strict application of the said formula.
Furthermore, the fact that the defendants employed the judgment factor to give the Seaboard Air Line Railroad a greater reduction from the figure produced by applying the said formula than the reduction given to the plaintiff does not of itself establish discrimination against the plaintiff. Why the defendants gave this greater reduction to Seaboard is not disclosed by the record, other than in the last-quoted language of the final decree.
In this state of the record, we must assume, as did the chancellor in his final decree, that the defendants performed their duty and acted upon circumstances deemed by them to justify this difference in their treatment of the Coast Line, Seaboard, and the plaintiff.
We base the just-mentioned assumption upon the established rule in Florida, as stated by the Supreme Court of Florida in German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 So. 292 (1910), as follows:
"The law contemplates that a wide discretion be accorded to the tax assessor in the valuation of property for the purposes of taxation. In the absence of a clear and positive showing of fraud or of an illegal act or of an abuse of discretion rendering an assessment authorized by law so arbitrary and discriminating as to amount to a fraud upon a taxpayer or to a denial of the equal protection of the laws, the courts will not in general control the discretion of the tax assessor in making valuations for taxing purposes. The burdens of taxation cannot be made exactly equal. See 2 Cooley on Taxation, 1440 et seq.; King v. Gwynn, 14 Fla. 32."
Accordingly, we concur with the chancellor's findings and conclusions in the final decree appealed from that the plaintiff has failed to establish that the defendants' valuation of its property for 1961 or 1962 is, as a matter of law, excessive or discriminatory, and so his decree, dismissing the second amended complaint and the supplemental complaint at the plaintiff's cost must be and it is
Affirmed.
RAWLS, C.J., and MELVIN, WOODROW M., Associate Judge, concur.