KANSAS CITY SOUTHERN RAILWAY CO. *v.*
ARK. COMMERCE COMMISSION.

5-1813                                         323 S. W. 2d 193

Opinion delivered April 13, 1959.

[Rehearing denied May 11, 1959]

394

*Hardin, Barton, Hardin & Garner,* for appellant.

*Harry E. McDermott, Jr.,* for appellee Ark. Commerce Comm.; *Russell G. Morton,* for Appellee Assessment Coordination Dept.

SAM ROBINSON, Associate Justice. This case involves the proper valuation of the property of appellant, Kansas City Southern Railway Company, in the State of Arkansas for *ad valorem* tax assessment purposes. The valuation as corrected by the Arkansas Commerce Commission, hereinafter referred to as "Department", was placed at $4,330,680. On appeal to the circuit court the valuation found by the Department was affirmed and the Railroad Company has appealed to this Court, contending that the proper valuation is only $1,439,965.

The formula used by the Department in determining the correct valuation of the Railroad Company property for *ad valorem* tax purposes consists in the average of three different methods of ascertaining the value of the property. (1) There is what is known as the RCN-D method, meaning Reconstruction Cost New minus Depreciation, the value arrived at by this method being furnished to the Department by the Interstate Commerce Commission; (2) there is the method of adding the market value of the corporate stock to the funded debt, it being considered that the total assets equal the stock and debts; and (3) there is the method of capitalizing the net income, which is to consider the average net earnings of the company over a period of years and then estimate the total value of the assets as being such an amount as will produce a fair return on the value of the property. In this case the Department placed the total capitalized value of the railroad property at a sum which would yield 5.75% per annum after income taxes had been paid. The Railroad contends that the capitalized value should be such a sum as would yield 8.12%. Of course, if this rate of return were used, the capitalized value would be much less than such value when a 5.75% rate of return is used. The Railroad Company does not complain of the formula used in reaching the total val-

uation, but does stoutly contend that the Department made serious mistakes in reaching the total of each of the three parts of the formula.

First, with regard to the RCN-D: The valuation reached by the Department is $136,187,875. The Railroad says that it should be $132,031,203, or $4,156,672 less than the value found by the Department. The Railroad contends that the RCN-D figures furnished to the Department by the I. C. C. fail to take into consideration 3.2% depreciation for the year 1956 — the year immediately preceding the assessment year — although net plant additions for that year totaling $1,462,657 were added to the valuation.

The appellee answers this point by saying: "In response, appellees point out that while no depreciation was shown for 1956, neither was appreciation shown." And appellee further says: "It would seem that if it (the Railroad) sincerely believed it were entitled to depreciation, it should have submitted to the Commission a statement showing what the net plant additions were, the date of the addition, and the rate and amount of depreciation which they claim should be allowed. This was not done." The record shows that the Railroad Company did contend that it was entitled to 3.2% depreciation for 1956. The record further shows a net plant addition for 1956 of the value of $1,462,657. The Department accepted the Railroad Company's figure on the net plant addition, but refused to allow any depreciation for 1956. Appellee suggests that this Court take judicial knowledge that the I. C. C. valuation at the end of 1956 was some $11,500,000 greater than the valuation shown at the end of 1955. We do not think, however, that the valuation placed on a railroad by the I. C. C. on a particular date is a matter of such common knowledge or universal notoriety that this Court should take judicial knowledge of it. The fact remains that the Department was computing the valuation of the railroad for the tax year of 1956; certainly the Railroad had some depreciation of its property during that year, and it was given credit for none. However, the Railroad was charged with new ad-

ditions of $1,462,657. In view of the fact that no depreciation was allowed for the year in question, we do not think that the $1,462,657 should have been added to the valuation.

The Railroad contends that 25% should be deducted from the RCN-D value because of functional and economic obsolescence. It is claimed that if the Railroad were to be reconstructed only 37% of the stations and office buildings would be required; that only 47.60% of other buildings would be needed and there would be reconstructed only 44.67% of its shops and engine houses, *etc.;* that 500,000 net tons of revenue traffic per year is obsolescent and unprofitable; and that 4.22% of its total system trackage is obsolescent; that a total of 25% of its property is obsolescent due to functional and economic factors. Undoubtedly functional and economic obsolescence is reflected in both the stock plus funded-debt method and the capitalized earnings method of valuation. In both of these methods the Railroad received the benefit of both functional and economic obsolescence. In 1944 a report of the National Tax Association made to a Congressional Committee said: "It is largely because earnings and stock and bond values reflect the obsolescence which railroads have suffered as a result of over-optimism and the advent of competitive transportation agencies that they are regarded as the most reliable evidences of unit value." And in *Bailey* v. *Megan,* 102 F. 2d 651, it is said: "A computation of system value based upon average market price of stocks and bonds and a computation based upon a capitalization of net earnings reflect the effect, upon actual value, of obsolescence, of the competition of other means of transportation, and of all factors affecting earnings."

If the functional and economic obsolescence is deducted from the RCN-D valuation, such deduction would have to be considered in connection with the other two methods of arriving at a proper valuation. It would hardly be fair that such obsolescence be used where it is to the Railroad Company's advantage, but not be used in an approved formula when to the disadvantage of the

Railroad. If the RCN-D value were the only method used in arriving at the valuation for tax purposes, perhaps the deduction for obsolescence would be required. But it must be remembered that this method is only one part of a three-part formula, and the obsolescence is reflected in two of the parts to the advantage of the Railroad. The RCN-D valuation is considerably more than the stock and debt value, but it is only slightly more than the income value. According to appellant's contention with regard to functional and economic obsolescence, the RCN-D value should be about $30 million less than the income value and about $15 million less than the stock and debt value. Such value contended for by appellant apparently would be out of all proportion to the real value as reflected by the other parts of the formula used.

With reference to the RCN-D value as a proper part of a formula to determine the valuation for tax purposes, this Court said, in *St. Louis-San Francisco Ry. Co.* v. *Ark. Public Service Commission*, 227 Ark. 1066, 304 S. W. 2d 297: "Is this method — of cost value, capitalized earnings value, and stock and debt value — a fair 'yardstick' to determine the system value of Frisco's property? Frisco claims that the cost value is overweighted and that it should be given little, if any, consideration; and Frisco also claims that some of the other factors in the 'yardstick' have been overemphasized. We hold that the 'yardstick' used by the Commission in determining the system value of Frisco in this case is fair and not arbitrary. It is undenied that such a 'yardstick' has been used by the Commission heretofore, and that such a 'yardstick' is used in other states. One such case is that of *Chicago & Northwestern Ry. Co.* v. *Department of Revenue*, 6 Ill. 2d 278, 128 N. E. 2d 722, decided by the Supreme Court of Illinois in 1955, with *certiorari* denied by the U. S. Supreme Court, 351 U. S. 950. This is not the only 'yardstick' that could be used, but it is fair and equitable. As Mr. Justice BUTLER said, in 1934, in *Rowley* v. *Chicago & Northwestern Ry. Co.*, 293 U. S. 102, 79 Law Ed. 222, 55 S. Ct. 55, in discussing the assessment of railway properties by the State of Wyoming: 'The as-

certainment of the value of a railway system is not a matter of arithmetical calculation and is not governed by any fixed and definite rule. Facts of great variety and number, estimates that are exact and those that are approximations, forecasts based on probabilities and contingencies have bearing and properly may be taken into account to guide judgment in determining what is the money equivalent—the actual value—of the property.' "

Appellant says that the Department was in error in refusing to deduct from the RCN-D valuation certain properties which it claims are non-operating, and certain improvements. The Department did allow a deduction for some non-operating properties and on the others mentioned there is substantial evidence that they are not to be classed as non-operating, and that public improvements were deducted. Appellant maintains that the Department charged the Railroad with a working capital of $3,168,476, which is 12½% of its operating expenses for the previous year, the amount needed by the Railroad for a 45 day period, and that as a matter of fact it actually requires no working capital, because its daily revenues are sufficient to meet its needs in that respect. Whether the Railroad needs working capital is a question of fact. Evidence was introduced to prove that the same method of determining the required amount of working capital is used for every Class I railroad in the State, and we cannot say that the Department was in error in the finding that some working capital is required for Class I railroads.

Appellant next argues that 5.75% should not be used as a capitalization rate. In the Frisco case, a 6% capitalization rate was approved, and this was before taxes. Here, the 5.75% rate is after taxes. If 6% before taxes was reasonable in the Frisco case, certainly it cannot be said that in the case at bar 5.75% after taxes is not justified.

The next point raised by appellant is that the Department erred in failing to exclude current liabilities and unadjusted credits from the stock and funded debt

method of determining value, and we think appellant must prevail on this point. Included in the stock and funded debt valuation are current liabilities and unadjusted credits. Ark. Stat. § 84-606 provides that the assessing authorities "shall ascertain as nearly as it can and shall consider the market or actual value of all outstanding capital stock and funded debt." The current liabilities and unadjusted credits in question are not part of the funded debt. They consist of such items as "traffic and car service balances between appellant and various other companies, audited wages and miscellaneous accounts payable, which include employees' payroll allotments for U. S. Savings Bonds, and various prudentially accrued taxes, both federal and state, and employees' withholding taxes, railroad retirement, *etc.*, interest matured but unpaid on bonds which have been called as far back as 1945, but holders of some coupons have not been located and they cannot be paid by the trustee who holds the funds in New York," *etc.* Appellee points out "that under the provisions of § 84-605 the Department is directed to include in the valuation every element that adds value to the property." We fail to see how current liabilities and unadjusted credits can be considered as adding value to the railroad. Just the opposite effect would appear to be more reasonable. The fact that an engineer or conductor had not cashed his check does not make the railroad worth more.

Appellant owns practically all of the stock of the L. & A. Railroad, which is a separate corporation and is assessed and pays taxes as such. The L. & A. pays taxes on a valuation of $69 million. Since L. & A. pays its own taxes, appellant says it (Kansas City Southern) should have a credit to the extent of the full value on which L. & A. pays taxes, namely, the value of $69 million. The Department allowed a valuation of $18 million on L. & A. It is the contention of the Department that appellant is entitled only to a deduction for the value of the L. & A. stock owned by Kansas City Southern. The Department reached the correct conclusion. Insofar as L. & A. is concerned, Kansas City Southern

owns only the stock. If Kansas City Southern had to pay taxes on this stock, certainly it would have to pay only on the value of the stock. But, since Kansas City Southern does not have to pay taxes on the L. & A. stock, the Department having classed it as a non-operating asset, only the value of what Kansas City Southern owns should be deducted, and that is the value of the stock.

The Department allocated to Arkansas 16.21% of the value of the railroad property. Appellant says the proper allocation figure is 13.41%, and argues that there are certain factors which render the Arkansas property less valuable than appellant's property located in other states. Appellant contends that Arkansas has a ''Full Crew Law''; that appellant is required to move its trains across a mountainous terrain in Arkansas; that Arkansas is responsible for only 9.88% of the originating tonnage, and only 2.97% of the terminating tonnage; that Arkansas has lost in population, where other states have gained; that the per capita income of Arkansas is low compared to other states.

In the case at bar, the Department used the same method in allocating value as used in arriving at the valuation of all of the railroads in the State, and this method was approved in the Frisco case, and, as pointed out in that case, the ascertainment of the value of the railroad system is not governed by any fixed and definite rule. Finally, appellant contends that the Department erred in equalizing appellant's unit value at 20%; that other property in counties in which appellant operates is assessed from a low of 13.82% to a high of 18.08%; that all utilities have been assessed at 20%. In the Frisco case, we said: ''We recognize that obtaining a fair assessment of property has been a serious problem in this State for many years; but we know that considerable headway has been made toward more equitable assessments. Act No. 153 of the Legislature of 1955 shows the labor that the State is undertaking in this regard; and in § 4 of that Act the same figure of 20% is used. Some classes of property in Arkansas are assessed at more

than 20% ; other classes are assessed at less than 20% ; but the State is striving for a 20% figure. In this case Frisco has failed to show either that the Commission was in error in fixing the figure at 20%, or that the said figure was arbitrary, or that the said figure would result in confiscation." Likewise, in the case at bar we do not think the appellant has shown that the Department was in error or that a basis of 20% would result in confiscation.

Because the $1,462,657 in new additions for 1957 should be deducted, and because there should be deducted from the valuation the current liabilities and unadjusted credits, the judgment of the circuit court affirming the Department's finding of valuation is reversed, with directions to remand the cause to the Department so that a valuation consistent herewith can be determined.