In re Assessment and Valuation of Chicago and North Western Railway Company.
Chicago and North Western Railway Company, appellant, v. State Board of Equalization and Assessment, appellee.
101 N. W. 2d 873

Filed March 18, 1960.  No. 34714.

Gaines, Spittler, Neely, Otis & Moore, Carl McGowan, and George Hollander, for appellant.

Clarence S. Beck, Attorney General, and Homer G. Hamilton, for appellee.

Heard before Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Boslaugh, J.

This litigation concerns assessment of the property of appellant in Nebraska by appellee for the purpose of all ad valorem taxes, except municipal taxes, for the year 1959. Appellant made a return or schedule of its property as of March 31, 1959, to appellee in all respects as required by the statute. § 77-603, R. R. S. 1943. Appellant appeared at a hearing before appellee on May 4, 1959, and evidence was produced on behalf of and by appellant relative to the value of its property. Appellee on July 15, 1959, found and determined that the actual value of the property of appellant in Nebraska subject to assessment for taxation purposes by appellee was $20,422,068 and it assessed the property, after deducting locally assessed property of appellant, at the sum of $7,065,723.

The complaint of appellant concerning the assessment was in substance the following: The assessment of $7,065,725 was unjust, discriminatory, and unlawful because it was not less than 62½ percent of the actual value of the property in 1959 and all other tangible property in Nebraska was assessed at not to exceed 35 percent of the actual value thereof. Thirty-five percent of the actual value of the Nebraska property of appellant in 1959 did not exceed the sum of $3,722,170. The finding of appellee that the property of appellant in 1959 had an actual value of $15,047,540 was contrary to and was not sustained by the evidence. The 1959 assessment thereof was made by the use of erroneous and unlawful methods, formulas, and devices. The item or factor of "Investment in transportation property" used by appellee in computing the actual value of the property was erroneous and unlawful because it represents the estimated original cost as determined by the Interstate Commerce Commission as of June 30, 1917,

plus subsequent additions and betterments at cost, less retirements since that date without any allowance for depreciation on about $230 million or 40 percent of such investment at December 31, 1958, which is subject to wear and tear. The historical cost bears no relation to and is not legal evidence of the actual value of the property. The effect of the obsolescence of the branch lines of appellant which comprise a large portion of the railroad system of appellant in Nebraska and the development of other forms of transportation and the effect thereof on traffic carried and revenue earned by appellant in relation to the effect upon the value of the railroad property of appellant are not reflected or recognized in the investment account. This item or factor was first used by appellee in 1954 in deciding the actual value of railroad property for assessment purposes and its use has resulted in unreasonable and illegal discrimination in favor of all tangible property other than railroad property. The value of the property involved results from the use thereof by the public. The earnings produced by the use and the value of the property are measured and determined solely by the selling prices of its stocks and bonds and its earnings, and the net income should be capitalized at not less than 8 percent instead of 6 percent. Appellee in 1958 ascertained what it termed computed value which in fact was actual value of the property, deducted 5 percent from it, and purported to convert the remainder or 95 percent of the computed value into actual value of the property by multiplying it by 1.4286 as a conversion factor. The application of the conversion factor to a base of 95 percent of actual value instead of a base of 70 percent of actual value as applied to all other tangible property, resulted in the valuation of the property of appellant at 135.75 percent of actual value. The equalization by appellee of 35 percent of the purported actual value as determined by it resulted in a final assessment of the property of appellant at 47.5

percent of the actual value thereof while all other tangible property in the state was assessed at not to exceed 35 percent of its actual value. The major portion of the property of appellant in Nebraska, because of the lack of traffic density in the state, was below 500,000 net tons per mile of road which is indicative of economic obsolescence. As a result thereof, as compared to traffic handled in other states in which appellant operates, the use of all track miles as an allocation factor in computing and determining the actual value of the Nebraska property of appellant imports value into Nebraska which cannot be sustained by an equitable appraisal of the railroad property and results in an unjust, inequitable, and discriminatory assessment of the actual value of the property of appellant in Nebraska. The prayer of the complaint was that the 1959 assessment of the property be set aside and that it be valued and assessed for purposes of taxation at the same proportion of its actual value as all other tangible property was assessed in 1959 for taxation purposes but not in excess of $3,722,170.

A hearing was held by appellee on July 28, 1959, at which time additional evidence was introduced on behalf of appellant. Its complaint was that day denied and the original assessment of the property of appellant was affirmed by appellee. This appeal is a challenge of the legality of the recited actions of appellee.

The authority of this court in a proceeding of this character is by legislative mandate to hear and determine the matter in controversy de novo upon the record. § 77-617, R. R. S. 1943.

Appellee is charged with the obligation of assessing property of railroads and railroad corporations in the state except designated items outside of right-of-way and depot grounds. § 77-601, R. R. S. 1943. The Legislature has not defined any method by which railroad property in the state shall be valued for taxation by appellee. The Legislature has directed that specified

things shall be considered but it has not prescribed any definitive formula for ascertaining value. That is committed to the judgment and discretion of appellee to be exercised fairly within legal limitations and restrictions. Appellee may resort to any method by which a substantially just and correct determination of the value of such property can be reached if it includes consideration of the things which the statute requires.

This court in Chicago, R. I. & P. Ry. Co. v. State, 111 Neb. 362, 197 N. W. 114, remarked: "There are no settled or infallible rules for the ascertainment of the actual value of railroad property for the purpose of taxation. * * *." The opinion in that case states: "The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property."

In Great Northern Ry. Co. v. Weeks, 297 U. S. 135, 56 S. Ct. 426, 80 L. Ed. 532, it is said: "In determining the amount of the assessment the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give to them such weight as reasonably they might be deemed to have." See, also, State ex rel. Bee Building Co. v. Savage, 65 Neb. 714, 91 N. W. 716; Chicago, St. P., M. & O. Ry. Co. v. State Board of Equalization, 133 Neb. 640, 276 N. W. 391; Rowley v. Chicago & N. W. Ry. Co., 293 U. S. 102, 55 S. Ct. 55, 79 L. Ed. 222; Northern P. Ry. Co. v. State, 71 N. D. 93, 299 N. W. 696.

Appellee determined the actual value, referred to by it as system value, of the entire railroad property by a consideration of three factors: 5-year average value of stocks and bonds, 5-year average of net operating income capitalized at 6 percent, and investment in transportation property. Each factor was given equal weight and this resulted in an average value of the railroad

property of appellant of $224,506,367. It then decided the proportion or share of the system value that should be allocated to Nebraska on account of the part of the property of the appellant therein. This was determined by what appellee termed were allocation factors: Traffic units, gross earnings, car and locomotive miles, and current track mileage in Nebraska, compared with the same factors in other states where property of appellant was located. The component average of the four factors was 6.7025 percent. This, applied to the actual value of the operating property of the railroad as found by appellee of $224,506,367, resulted in $15,047,539. This was the actual value of the Nebraska property of appellant in 1959 subject to taxation as found by appellee but it did not take 35 percent thereof. Instead it reduced that amount by 5 percent to $14,295,162 and multiplied the remainder by 1.4286, thereby increasing the amount to $20,422,069, and labeled it actual value. Appellee then took 35 percent of that amount or $7,147,723, deducted the locally assessed property of $82,000, which resulted in $7,065,723, and that was the 1959 assessment of the property of appellant in Nebraska.

The assessment described above from which this appeal was taken is exhibited by the following:

I  SYSTEM VALUE

a. 5-year average net value stocks and bonds ............................................. $159,279,000

b. 5-year net railroad operating income capitalized at 6% ......................... 28,474,000

c. Investment in transportation property, ICC Report Page 200 ............... 485,766,102

3) 673,519,102

Average System Value ........................ $224,506,367

II  ALLOCATION FACTORS
Average 6.7025

III ALLOCATION OF COMPUTED VALUE
$224,506,367 x 6.7025%=$15,047,539

IV ASSESSMENT
In 1957 and 1958 allocated value less 5%=
basic value or 70% of actual value.  Therefore
the allocated computed value for 1959 less
5%=70% of actual value.  $15,047,539 less
5%=$14,295,162.  $14,295,162 x 1.4286=$20,422,069
$20,422,069 Actual Value
      35% Statutory Percent

$ 7,147,723
    82,000 Local Assessment

$ 7,065,723 State Board Assessment for 1959

The issue on this phase of the appeal is:  Does the undisputed evidence establish that the actual value of the 1959 Nebraska property of appellant did not exceed $15,047,539 designated in the assessment order of appellee as allocation of computed value, and was the increase thereof by appellee to $20,422,069 arbitrary, discriminatory, and contrary to law?

The evidence was produced by or on behalf of appellant.  There was no evidence by or on behalf of appellee.  There is a presumption that when an assessing authority values property for taxation purposes it acts fairly and legally upon sufficient evidence to sustain its action but the presumption disappears if there is evidence to the contrary and thereafter the reasonableness and legality of the valuation made by the assessing authority is one of fact to be determined from the evidence, unaided by presumption, and the burden of showing an improper assessment is upon the complaining party.  Baum Realty Co. v. Board of Equalization, 169 Neb. 682, 100 N. W. 2d 730; Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537; Ahern v. Board of Equalization, 160 Neb. 709, 71 N. W. 2d 307.

There is undisputed evidence of the actual value of the entire operating property of appellant in 1959 as established by the market value of its stocks and bonds, its capitalized earning power, and its investment in transportation property less depreciation. It is not true, as appellee asserts, that there is no proof by appellant that the actual value of the property is different from that determined by appellee. There is no proof or legal justification to sustain the increase of the 1959 actual value of the Nebraska property of appellant from $15,047,539 to $20,422,069 as was done by appellee as shown by section IV entitled "Assessment" of the order of appellee of July 15, 1959. The resort to the fiction of deducting 5 percent from the value of the Nebraska property and multiplying the remainder by the conversion factor of 1.4286 was induced by changes in the revenue statutes of the state. The 50 percent of full value law applied to all tangible property in 1953, 1954, and 1955. The 50 percent of basic value law governed assessment of tangible property in 1956 and 1957. The amendment requiring assessment of property of that kind to be valued at actual value and assessed at 35 percent thereof became effective September 20, 1957, and it applied to 1958 and 1959 assessments. § 77-201, R. S. Supp., 1953; § 77-201, R. S. Supp., 1955; § 77-201, R. S. Supp., 1957.

In each of the years 1953, 1954, and 1955 appellee found the value of the entire operating property of appellant by use of the identical three factors used for that purpose in 1959 and called it system value. It determined the value of the Nebraska property of appellant by allocating to it a percent of the system value by the same method it did in 1959; referred to the amount thereof in each of the years 1953 and 1955 as allocated value 100 percent and for the year 1954 as "allocated actual value" of the Nebraska property; and fixed the assessment for each of those years at 50 percent of that value. The record is definite that in

each of those years appellee determined the value of the property of appellant by the use of the same three factors or elements of value used by appellee in 1959 in arriving at what it called system value but which was the actual value of the property of appellant. This is true or appellee did not in any of those years find the actual value of the property as the statute required. There is no showing or explanation in the record of appellee why system value should mean actual value in those years but should not have that meaning in 1959.

Prior to the enactment of the 35 percent of the actual value assessment law all tangible property was valued at its basic value and assessed at 50 percent thereof and the ratio of basic value to actual value was by mandate of the Legislature fixed by appellee. It determined the basic value to be 70 percent of actual value and when the statutory assessment rate of 50 percent was applied, it resulted in a statutory level assessment of 35 percent if basic value had been properly determined in the first instance. The basic value law was amended effective September 20, 1957. The basic value element was eliminated and all tangible property not exempt from taxation was required to be valued at actual value and assessed at 35 percent thereof. §§ 77-112 and 77-201, R. R. S. 1943. Thereafter 100 percent of actual value of property which had been assessed at 70 percent could be, if its value had not changed, readily ascertained by multiplying the assessment of the previous year by the resultant of 100 divided by 70 or 1.4286.

The value of the railroad system of appellant for 1956 was ascertained by appellee as it had been in the previous years discussed above by the average of the identical three factors and the value of Nebraska property was determined by allocating the average of the four factors used in previous years or 6.705 percent. The value of the Nebraska property was thereby pro-

duced as $15,036,635 which appellee termed allocated value but which was no greater or different than but was in fact actual value. Instead of taking 70 percent of that amount in accordance with the resolution fixing the ratio of basic value to actual value, appellee declared the basic value of the Nebraska property of appellant to be $14,284,803 which was exactly 95 percent of the allocated value.

Appellee by the same items and procedure determined in 1957 what it stated was the system value of the property of appellant and allocated 6.683 percent thereof or $14,276,560 as the value of the Nebraska property which was no greater or different than but was in fact the actual value of the property. Appellee then stated the basic value was $13,562,730. That was 95 percent, not 70 percent, of $14,276,560 as the law required to arrive at basic value. The insertion in section IV of the 1958 assessment order of appellee of the Nebraska property of appellant of: "(1957 Computed value 5% = Basic Value)" is an admission of what is said above concerning the 1957 assessment. This is made certain by the immediately following item in the 1958 assessment order: "1958 Computed value 5% = $13,489,047" which is precisely 5 per cent less than the 1958 computed value of $14,198,997. The 1957 assessment of the Nebraska property of appellant was made on that erroneous basis. It is not important that appellee designated the $14,-276,560 as allocated value because the factors used and the evidence definitely show it was actual value.

Appellee substantially concedes that basic value used in the 1956 and 1957 assessments was 95 percent of what was labeled by it as allocated value. It could not be otherwise because simple arithmetic demonstrates the factors employed in composing allocated value establish that it was actual value of the Nebraska property of appellant in each of those years. A consideration of market value of stocks and bonds, the earning power of the railroad, and the investment account less depre-

ciation evidences actual value. There was no attempt by appellee in either 1956 or 1957 to disclose by its assessment order or otherwise why it arbitrarily said basic value was 95 percent of what was obviously the actual value of the Nebraska property when basic value of all tangible property was established by the resolution of appellee at 70 percent of actual value. This omission was a disregard and violation of the statute which required that appellee in making an assessment of railroad property "shall set forth the manner in which it arrived at the assessment, the several items included in the total assessment and the manner of arriving at the several items and the total." § 77-609, R. R. S. 1943.

The value of the entire property of appellant in 1958 was determined by the average of the same factors as used in the previous years discussed above and 6.525 percent thereof was assigned by the method used in previous years to the Nebraska property. That resulted in the sum of $14,198,997, designated by appellee as allocation of computed value to Nebraska. That was the same character of finding arrived at by the same method as had been previously considered and treated as actual value of that property. Appellee reduced that amount by 5 percent, multiplied the remainder by 1.429, and produced $19,275,848 which was described as 1958 actual value. The statutory percentage of 35 percent was applied and it resulted in an assessment of $6,746,546. The day of this assessment appellee adopted a resolution which recited that the method of determining the actual value of tangible property for 1958 used by all county assessors is to convert basic value for 1957 to actual value by multiplying the basic value by 1.429. Ironically, appellee also recited in the resolution that it was "convinced that railroad property should be valued at 35% of actual value as is all other tangible property." Its expressed and recorded conviction was not enough to control its action because that identical day, as shown by the same resolution, appellee valued

and assessed the property of appellant in Nebraska at very much more than 35 percent of actual value resulting from the fact that the property had not been valued at 70 percent of actual value in 1957 but at 95 percent of actual value; and, notwithstanding this important fact, the conversion factor of 1.429 was applied to the value of the Nebraska property of appellant in 1958 as found by appellee to arrive at what it called actual value. The conversion factor of 1.429 had no relation to the situation presented by the 1958 assessment. Its use was arbitrary and it produced an equally arbitrary result.

The 1959 assessment of appellant was made by the same method as the 1958 assessment was accomplished. The identical factors were employed for finding system value and the same items were used to ascertain the percentage of the system value that should be assigned to Nebraska which was determined to be 6.7025 percent. It produced $15,047,539 and appellee reduced that amount by 5 percent and multiplied the remainder by 1.4286, 100 divided by 70 carried to the fourth decimal instead of 1.429 used by it in 1958. The result was $20,422,069. The statutory rate of 35 percent was applied to the last amount stated above and that produced, after deducting locally assessed property, an assessment of the Nebraska property of appellant of $7,065,723.

The authority and obligation of appellee were to assess the property of appellant on the same basis as other tangible property was required to be assessed. §§ 77-601 and 77-604, R. R. S. 1943. All tangible property was required to be valued at its actual value and to be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943.

The hypothesis and result of each part of section IV of the assessment order of 1959 made by appellee are incorrect factually and are contrary to law. The 1957 or 1958 allocated value less 5 percent did not equal basic value or 70 percent of actual value as that formula as-

sumed and stated. In making the 1957 assessment instead of appellee taking 70 percent of allocated value as basic value, it treated 95 percent of allocated value as basic value. That error resulted in overassessment, was repeated, and was given effect by appellee to the prejudice of appellant as hereinbefore noted in the assessment of 1958. The error of the first sentence inheres in each of the following parts of the formula.

There was no necessity of fact or jusification of law for the resort by appellee to a reduction of 5 percent of the amount of the valuation assigned by it in 1959 to Nebraska or for the use by it of the conversion factor in ascertaining the actual value of the property of appellant in Nebraska. The use of these was arbitrary and in violation of the statute defining actual value. The use of them disregarded the undisputed evidence that the actual value of the Nebraska property of appellant did not exceed $15,047,539, the amount of the allocation by appellee to Nebraska. Appellee found that the system value of appellant was $224,506,367. Included in this amount was every possible value of the railroad of appellant including its franchise or its right to exist. Appellee made no attempt to demonstrate that there was any omission of anything of value from the schedule of property of appellant furnished appellee in 1959. It was accepted, acted upon without objection, and everything therein was valued and included in what appellee termed system value in its assessment order. Appellee belatedly now says in this court that the statute requires it to assess railroad property "together with franchises"; that the record does not show that it made a separate valuation of franchises; and that it may be presumed it considered the element of franchise rights in arriving at actual value. This may be accepted if appellee means by actual value $15,047,539, the value assigned to Nebraska. Otherwise it is incorrect because franchise value was included in the assessment by use of the factors used by appellee to reach what it termed

system value. The following from State ex rel. Bee Building Co. v. Savage, *supra,* fully explains the matter of franchise value in making such an assessment: "Where the property of a railroad corporation is assessed by the state board of equalization as a unit, and in fixing the value thereof the board takes into consideration the fact that the property is being used for effectuating the objects of the corporation, is earning an income in the transportation of passengers and carrying of freight for hire, and that such corporation is exercising the rights, powers and privileges of corporations organized for the purpose of engaging in business as common carriers, such assessment, so made, would include and cover the intangible as well as the tangible property of the corporation, and would be an assessment of its franchise."

The system value fixed by appellee of $224,506,367 is and must be accepted as the 1959 actual value of the entire railroad property of appellant. Any contention otherwise is only a play on words without evidentiary integrity or legal justification. The practice by appellee of reducing the value assigned to appellant in Nebraska by 5 percent originated in 1957. It is not set out or expressed in the assessment order of that year except as it results from the finding that the Nebraska property had a certain value for that year and that the basic value thereof was exactly 5 percent less than the total value assigned to Nebraska. This practice reoccurred in 1958 and 1959. The deduction of 5 percent of the value assigned to Nebraska in each of those years was arbitrary and without reason therefor given in the respective orders of assessment of appellee. The reason suggested in this litigation by appellee that the allocated value was 5 percent more than basic value is not convincing. Appellee had fixed basic value at 70 percent of actual value of all tangible property for taxation purposes. The allocated value assigned to the Nebraska property was a finding of actual value of the property by all the applicable evidence in the record.

If it was not, then appellee did not in any of those years find what the actual value of the property was in which event it had no basis for finding the basic value of it. The indulgence of appellee making an unexplained 5 percent deduction from the value of 'the property to be assessed and resorting to an inappropriate and incorrect conversion factor when its primary inquiry mandated by the Legislature was to find actual value of the property to be assessed, was a resort to fictions. A fiction is not allowed to obscure the facts when the facts become important. The important facts which the fictions tended to obscure in 1958 and 1959 were that in 1956 and 1957 appellee took 95 percent of the actual value of the Nebraska property of appellant for basic value rather than 70 percent, which the law required, and based the assessment of the property thereon. Appellee then applied to the incorrect amounts found for those years a conversion factor in 1958 of 1.429 and in 1959 of 1.4286 which was in any event only permissible when the basic value of the property was fixed at 70 percent of actual value and thereby appellee added in 1959 more than $5 million to the actual value of the property of appellant in this state.

Appellee assigned 6.7025 percent of the total value of the railroad property in 1959 to the Nebraska property of appellant which was $15,047,539. That is the actual value of the property in 1959 concerned in this litigation and the duty of appellee was to assess it at 35 percent. Appellee destroyed any trace of reasonableness or realism by deducting 5 percent from that amount, multiplying the remainder by a conversion factor, and calling the result the actual value of the Nebraska property. The action of the appellee in inflating the value of the Nebraska property of appellant by the devices it used was arbitrary, unreasonable, and contrary to law.

The original assessment order of July 15, 1959, was adopted by only two members of the board voting for it. One member voted against it, one member ab-

stained from voting, and one member was absent. The use of the matter contained in section IV of the order of assessment was not a mistake, an inadvertence, or because of insufficient information. It was done advisedly and arbitrarily. The Tax Commissioner of the state advised against the use of it. He presented a proposed order of assessment wholly eliminating that formula. He advised that the facts and the law required a reduction in railroad valuations for assessment purposes. One of the members who voted for the assessment order said in a voluntary, formal statement he would never be a party to extending the type of relief suggested to any special interest at the unavoidable tax expense of Nebraska farmers, main street merchants, and homeowners. However, the same statement tacitly conceded that railroad property had been overassessed and this was illustrated by a reference to 1955 when, as asserted in the statement, the "valuation should have declined because of the change in base, it actually increased 5 million dollars." The other member who supported the 1959 assessment order said he opposed any concessions to any special interest group when the average taxpayer would have to make up the difference from his own pocket. Neither of these members mentioned anything specific concerning the value of the property to be assessed nor did they undertake to show where the judgment of the Tax Commissioner was wrong. The Tax Commissioner stated that appellee had no right to consider such an effect among taxpayers and that its only right and duty were to make an assessment of railroads at the same level as all other assessments. He appropriately said if appellee was to refuse to reduce values because other taxpayers will make up the difference, then no taxpayer, whatever his status or station, could ever get relief from unjust taxation. The observations in Cumberland Coal Co. v. Board of Revision of Tax Assessments, 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146, are appropriate: "The case is not one of mere

errors in judgment in following a proper method, * * * but one where the challenged discrimination resulted from a plan of assessment which was none the less systematic and intentional because of belief in its validity."

The method employed by appellee in assessing the property of appellant in Nebraska as exhibited by section IV of its assessment order of 1959 resulted in the assessment of the property at not less than 47½ percent of its actual value as found by appellee and described in its order as allocation of computed value. The facts of the assessment may be correctly and simply stated as follows:

| | |
|---|---|
| Actual value | $15,047,539 |
| Assessment | 47.5009% |
| | $ 7,147,723 |
| Less local assessment | 82,000 |
| | $ 7,065,723 |

All tangible property has since September 20, 1957, been required to be valued at its actual value and to be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943. The evidence establishes that all tangible property except railroad property was assessed at not more than 35 percent of its actual value. The Constitution provides that taxes shall be levied by valuation uniformly and proportionately upon all tangible property, subject to exceptions not important to this case. Art. VIII, § 1, Constitution of Nebraska.

Chicago, B. & Q. R. R. Co. v. State Board of Equalization & Assessment, *ante* p. 77, 101 N. W. 2d 856, is decisive of the conclusion that the 1959 assessment of the Nebraska property of appellant by use of the formula in section IV of the assessment order is arbitrary, discriminatory, and contrary to law. Therein it is said: "It was the duty of the State Board of Equalization and Assessment in 1959 to value railroad property in the state at its actual value and to assess

it at 35 percent thereof, and any substantial departure therefrom was a disregard of the legislative mandate and constituted an arbitrary valuation and assessment of the property. * * * A formula for determining the value of tangible property for taxation purposes must be appropriate to produce the result required by statute; and if an arbitrary basis is used which is not uniformly applied to all tangible property, the result is an arbitrary one and will not sustain a valuation for taxation purposes. * * * It is an unlawful discrimination, prohibited by the Constitution and the statutes of the state, to assess the property of a railroad at 47½ percent of its actual value when all other tangible property is assessed at not more than 35 percent of its actual value. * * * Taxing authorities may not withdraw any property from the principle of uniformity of taxation as provided by the Constitution and statutes of the state and one owner of property cannot be compelled to pay a greater proportion of taxes according to the value of his property than another property owner of the same class is required to pay."

The difference between not less than 47½ percent and 35 percent when applied to the large valuation involved in this case is not substantial or appropriate uniformity as contended by appellee and as required by the Constitution and the applicable statute of the state. Appellee applied the factor of 1.4286 to 95 percent of the actual value of the railroad property and to 70 percent of the actual value of other tangible property. The fact that a uniform percentage was used is not important. The discrimination between railroad property and other tangible property and the overvaluation of the former resulted from the deliberate act of appellee refusing to apply the conversion factor to the same basic valuation. As a result of such discrimination in the use of the conversion factor alone, apart from any other formula error, the property of appellant was assessed at not less than 47½ percent of its actual value and other tan-

gible property was assessed at not more than 35 percent of its actual value. The circumstances of this case as discussed in the foregoing characterize the assessment of the Nebraska property of appellant for 1959 as arbitrary, unreasonable, and discriminatory.

Appellant assigns error in the assessment because appellee used investment in transportation property as one factor in determining the value of the property of appellant in Nebraska in that it represents the original cost as decided by the Interstate Commerce Commission as of June 30, 1917, without any allowance for depreciation on about 40 percent of such investment at December 31, 1958, which is subject to wear and tear and it does not reflect the obsolescence inherent in the entire account due to the sharp decline in traffic carried and revenue earned by appellant.

The argument of appellant emphasizes in support of the assignment substantially the following matters: The record establishes a gross overvaluation of the property of appellant because appellee gave full weight to historical or investment cost without proper allowance for obsolescence and in the face of an extreme disparity between cost figures and commercial values as shown by the market value of its securities and its capitalized earnings. The three factors from which the system value of the railroad was determined were a 5-year average value of stocks and bonds, the capitalization at 6 percent of the average of net earnings during a 5-year period, and the investment in transportation property. The cost figure used by appellee was $485,766,102 which is three times that of the 5-year average of the stocks and bonds value of $159,279,000 and more than sixteen times greater than the 5-year average of net operating income capitalized at 6 percent amounting only to $28,474,083. The relationship of the cost factor to securities value and capitalized income is not as disproportionate to railroads generally as it is to appellant because of its greater degree of obsolescence experienced

by it. The use of the cost factor, without substantial debasement thereof for obsolescence, inherently discriminates in favor of railroads with a lesser degree of obsolescence and against railroads with a greater degree of obsolescence, of which appellant is a prime example. The traffic density for the year 1958 of appellant was less than 500,000 net revenue tons per mile of line, and this indicates a complete obsolescence of railroad properties according to the evidence. The evidence of the net return on investment for six standard railroads and appellant showed a return of less than 1 percent for appellant and an average of 6½ percent for the other six. The return on the investment of appellant was 81 percent below that of the other railroads. This indicates that it would be improper to use any cost figures in an inquiry concerning the value of the property of appellant without a debasement up to 80 percent of such figure. There was evidence, not contradicted, of the use of the property of appellant compared to six other standard railroads. Using five factors, it was disclosed that appellant was about 60 percent under that of all the other railroads. This would require at least a substantial debasement in arriving at the fair market value of the property. There is evidence that if cost is to be accorded any consideration in deciding market value, there should be a minimum of 60 percent for obsolescence. There is evidence, not disputed, that the use of investment cost to determine market value of the property of appellant was arbitrary and it should be given little if any weight without making a full and realistic allowance for obsolescence as established by the proof. It was shown that there was no net operating income from the property of appellant in Nebraska for 1958 but there was a loss of $1,377,629. This evidence of the condition of appellant so far as the Nebraska property is concerned clearly convinces, appellant asserts, that a different measuring rule or method must be used for appellant if market value of its operating

property in this state is to be established as the law requires. The cost of transportation property is relatively undesirable evidence of value for many railroads. Value looks to the future, being the present worth of future income expectations; while cost is based entirely on experience. Past investment has relevance in the determination of present worth only to the extent that it provides a clue to earning prospects. If the cost factor is not debased to reflect the degree of obsolescence, it being the impairment of the earning power of property, no clue is provided by such cost factor as to earning prospects.

A railroad operating in this state is required to make a comprehensive and detailed schedule of all its property each year on or before April 1 to appellee in conformity to the instructions and forms prescribed by it. The schedule must show the kind, extent, and value of the property of the railroad; its earnings and net income; the value of its stocks and bonds; the amount of its secured and unsecured indebtedness, except expenses of operations; the description and value of its physical property, real and otherwise; and other elaborate information relative to its property, operations, and condition. § 77-603, R. R. S. 1943. Appellee is required to consider the values given in the schedule in arriving at the true value of railroad property and its franchises. The schedule is not conclusive of the value of the property. Appellee from all information it can obtain must find the true value of the property and assess it on the same basis as all other property is required to be assessed. § 77-604, R. R. S. 1943. Appellee, commencing with the year 1953, found the system value of each railroad by consideration of the 5-year average value of stocks and bonds, a 5-year average of net operating income capitalized at 6 percent, and the investment account of the railroad showing the amount invested in transportation property as depreciated according to Interstate Commerce Commission regulations and addi-

tional deductions of 10 percent, 5 percent, and 5 percent.

The use of the investment account of appellant in the 1959 assessment is the basis of this challenge. It is quite immaterial in the consideration of this contention of appellant whether reference to the investment account is made as historical cost less depreciation or as reproduction cost less depreciation. The statute states that actual value of property for taxation shall mean the value that is ascertained by using, as far as applicable, a designated formula including "reproduction cost less depreciation." § 77-112, R. R. S. 1943. The reproduction cost less depreciation as the statute states or historical cost less depreciation as it is sometimes expressed has frequently been considered and approved by the courts as a permissible factor in conjunction with other factors in determining the actual value of the property of a railroad company.

State ex rel. Bee Building Co. v. Savage, *supra,* states: "As to just what will determine the value of the entire railroad property, a part of which is to be assessed in any one state or taxing jurisdiction, the courts themselves are not in entire accord. There are, doubtless, many elements and factors which conduce to a correct determination of the true value, and may properly be considered, which have received the approval of the courts generally. * * * Whether it be for the purpose of fixing reasonable rates for the transportation of passengers and carrying of freight, or for the purpose of taxation, the rule to be applied in ascertaining the value of the property should be the same. * * * In the case of Smyth v. Ames, 169 U. S., 466, 546, * * * Mr. Justice Harlan, who wrote the opinion of the court, says with reference to the reasonableness of rates to be charged * * *, that the basis of all calculations 'must be the fair value of the property being used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market

value of its bonds and stocks, the present as compared with the original cost of construction, the probable earning capacity of the property * * *, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property.' "

It is said in Chicago, St. P., M. & O. Ry. Co. v. State Board of Equalization, *supra:* "There are various standard methods of valuation of railroads for taxation purposes. For examples: The ad valorem method, by which the property is appraised the same as other property in the state; the capitalized income method, under which the net income is ascertained and the amount thus derived is capitalized at some fair rate of return; and the stock and bonds method, by which the value of the stocks, bonds and other outstanding indebtedness is considered with other property values with a view of arriving at a market value. These are not all the methods, but they suffice to show at a glance some of the more customary methods of valuation."

In Chicago & N. W. Ry. Co. v. Department of Revenue, 6 Ill. 2d 278, 128 N. E. 2d 722, the court said: "Throughout its brief plaintiff refers to capitalized earnings and market value of securities as the 'statutory standards,' and appears to argue that the statute does not permit consideration of reproduction cost in determining the assessed value of railway properties. * * * The physical value of property, shown either by reproduction cost or historical cost, has been held to be an important factor in fixing values for taxation purposes. * * * In our opinion the authorities do not warrant ignoring the physical value of railroad property in determining its assessed value under ordinary circumstances, nor do they indicate that an undue weight was given to that factor in this case. The two factors pressed upon us by plaintiff are not without deficiencies as yardsticks of

value. In the case of ordinary property, the income which a particular owner is able to realize from it is not considered relevant in determining value. * * * It is admissible here not because of its intrinsic reliability, but by necessity. Nor is it realistic to regard as conclusive the values which the securities market indicates. Many factors, unrelated to the values of particular property, may play a part in determining the price of securities."

St. Louis-S. F. Ry. Co. v. Arkansas Public Service Commission, 227 Ark. 1066, 304 S. W. 2d 297, contains the following: "Is this method—of cost value, capitalized earnings value, and stock and debt value—a fair 'yardstick' to determine the system value of Frisco's property? Frisco claims that the cost value is overweighted and that it should be given little, if any consideration * * *. We hold that the 'yardstick' used by the Commission in determining the system value of Frisco in this case is fair and not arbitrary. It is undenied that such a 'yardstick' has been used by the Commission heretofore, and that such a 'yardstick' is used in other states. One such case is that of Chicago & Northwestern Ry. Co. v. Department of Revenues, 6 Ill. 2d 278, 128 N. E. 2d 722 * * *. This is not the only 'yardstick' that could be used, but it is fair and equitable."

Kansas City So. Ry. Co. v. Arkansas Commerce Commission, —— Ark. ——, 323 S. W. 2d 193, states: "The Railroad contends that 25% should be deducted from the RCN-D value because of functional and economic obsolescence. * * * Undoubtedly functional and economic obsolescence is reflected in both the stock-plus-funded-debt method and the capitalized earnings method of valuation. In both of these methods the Railroad received the benefit of both functional and economic obsolescence. * * * And in Bailey v. Megan, 8 Cir., 102 F. 2d 651, 655, it is said: 'A computation of system value based upon average market price of stocks and bonds

and a computation based upon a capitalization of net earnings reflect the effect, upon actual value, of obsolescence, of the competition of other means of transportation, and of all factors affecting earnings.' "

People ex rel. McDonough v. Grand Trunk Western R. R. Co., 357 Ill. 493, 192 N. E. 645, declares: "The factors of reproduction costs and historical cost, or original cost plus the cost of betterments, are important factors to be considered, although not necessarily controlling, in determining the fair cash market value of railroad property."

In Northern P. Ry. Co. v. State, 71 N. D. 93, 299 N. W. 696, the court said: "The members of the Board were justified, and it was their duty, to take into consideration all facts which go to make up the actual value of the railroad property in this state. The stock and bond method and the capitalization of earnings and a composite of these methods based upon a period of time likely to reflect the market value of the property, were doubtless proper matters to be considered by the Board; but the Board was not restricted to these. The value of the physical elements, the cost of construction and of replacement, the present and prospective earning capacity at rates that are reasonable * * * were also matters that the State Board of Equalization properly might consider, giving such weight to the different facts as in their judgment, fairly and honestly exercised, they deemed them to be entitled to receive."

In Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 48 L. Ed. 761, it is said: "On the other hand, it (the state) can tax property permanently within its jurisdiction although belonging to persons domiciled elsewhere and used in commerce among the States. And when that property is part of a system and has its actual uses only in connection with other parts of the system, that fact may be considered by the State in taxing, even though the other parts of the system are outside of the State. The sleepers and rails of a railroad * * * are worth more

than the prepared wood and the bars of steel or coils of wire, from their organic connection with other rails or wires and the rest of the apparatus of a working whole. This being clear, it is held reasonable and constitutional to get at the worth of such a line in the absence of anything more special, by a mileage proportion. The tax is a tax on property, not on the privilege of doing the business, but it is intended to reach the intangible value due to what we have called the organic relation of the property in the State to the whole system."

In Harris Trust & Savings Bank v. Earl, 26 F. 2d 617, it was contended that valuation of railroad property for taxation should be determined, if not altogether at least most largely, from a consideration of the earning capacity of the property. The court said: "But it is not the law that the valuation of railroad or other property for taxation purposes is to be determined from any single factor. As bearing upon the proper result, many facts have evidential value. Certainly, among others, are to be considered original cost, cost of reproduction less depreciation, bonded indebtedness, current market value of stock and bonds, and earning capacity. Of these the two last named are of the greatest significance. * * * Even if it be conceded that a close and scientific inquiry demonstrates that during a period of two years (1924 and 1925) earnings disappeared entirely * * * that fact by itself does not make the valuations fixed unquestionably and beyond all bounds excessive * * *."

City of Jersey City v. State Department of Taxation, 136 N. J. L. 353, 56 A. 2d 479, asserts: "Furthermore, the failure to operate at a profit is not in and of itself conclusive evidence that the assessment of its property is unreasonable, nor does it operate to relieve the railroad from paying its proportion of the public tax burden."

Appellant refers to the statements in Chicago & N. W. Ry. Co. v. Eveland, 13 F. 2d 442, that: "* * * the

net earnings of the property and the market value of its stocks and bonds for a reasonable period antecedent to the making of the assessment constitute the most reliable and influential evidence of that value," and "In determining the value of the property of a railway company * * * the value of the use of such property * * * and its net revenue from such use, and * * *the current market value of its stocks and bonds are among the most persuasive and authoritative—far more so than the cost of the property or the cost of its reproduction new in cases in which the property is in operation and has been for many years" in support of its contention that the historical cost as depreciated was given too much weight in the assessment and its conclusion that the court in that case rejected the doctrine that costs should be taken into consideration in deciding the value of railroad property. The court which decided that case said concerning it in the later case of Harris Trust & Savings Bank v. Earl, *supra:* "The case cited (13 F. 2d 442) by no means holds that earning capacity is completely to overshadow other factors. Indeed, in that very case other factors were given such consideration as that a $29,000,000 valuation was inferentially held fair on railroad property producing substantially no net earnings whatsoever."

Bailey v. Megan, 102 F. 2d 651, is urged as an authority for rejecting a valuation based on costs. That litigation concerned the valuation of the property of appellant in the State of South Dakota for the year 1935 and considered a special and unfortunate situation of such gravity that the railway company was involved in a bankruptcy proceeding. The case was brought and prosecuted by the trustee for the property of the railway company. However, the court, notwithstanding the unfavorable condition of the railway company, its property, and its earnings, sustained an assessment of the property in South Dakota to the extent of 65 percent of it in an amount in excess of $15 million. The method

used by the taxing authorities in deciding the 1935 value of the property was not disclosed. The court in that case made this significant statement: "A computation of system value based upon average market price of stocks and bonds and a computation based upon a capitalization of net earnings reflect the effect, upon actual value, of obsolescence, of the competition of other means of transportation, and of all factors affecting earnings * * *."

Appellant includes in its argument a quote from the opinion in State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, to the effect: "* * * that, when you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have * * * ascertained the true value of the road, all its property, its capital stock, and its franchises * * *." That case concerned the valuation of three railroad properties in Illinois. The court recited that the capital stock of one of the carriers was sunk, was of no value, and that its funded debt had no present market value. It was argued that the meager earnings and low market value of the securities of the railroad company were conclusive as to the valuation of the property. The opinion in that case contains the quotation from it by appellant but immediately following that language appears this important statement: "This would of itself be, perhaps, the fairest basis of taxation for the State at large, if all railroads were solvent and paid the interest promptly on their funded debt. * * * If taxes were assessable alone on the value of the capital stock and franchises of the corporation, cases might be found where these were worth nothing, and such companies would pay no tax even for their real estate and personal property. And this is precisely the main argument of counsel for the Toledo, Peoria, and Warsaw Railroad Company, in opposition to the law and to the rule of the board of equalization. But individuals do not escape taxation on their real and personal property

because they are insolvent. * * * No State has ventured to establish the principle of permitting its visible, tangible property to escape taxation, relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts."

This case does not present a situation in which depreciated historical cost was considered by itself as a measure or element of true value of railroad property. Average value for a 5-year period of securities of appellant, capitalized average net income for a like period, and depreciated historical cost were considered together in reaching a conclusion as to system value. All railroads operating in the state were subjected to the identical items and method. The use of a cost factor in conjunction with appropriate additonal factors in ascertaining value of railroad property for taxation purposes has been generally sustained by the courts. The authorities are substantially in agreement that it is not ordinarily unreasonable, arbitrary, or contrary to law for an assessing authority to use and consider depreciated historical cost in connection with other recognized and approved factors in determining the value of railroad property. The assignment of appellant in this respect cannot be sustained.

Appellant assails the 1959 assessment of its Nebraska property because appellee in finding the value to be taxed in Nebraska used as one of the allocation factors current track mileage, meaning the proportion of the mileage in Nebraska to the entire mileage of the system. The basis of the objection is that the proof establishes that the part of the railroad in Nebraska is inferior to and much less valuable than the parts of it in other states; that an apportionment of values on a mileage basis is because thereof arbitrary and unreasonable; and that it results in bringing into this state a value located in other states. The mileage factor was not the only one employed in the 1959 allocation. The proportion of the system value assigned to this state was the percent-

ages that the Nebraska traffic units, 4.87 percent; gross earnings, 5.28 percent; car and engine mileage, 6.23 percent; and current track mileage, 10.43 percent, bore to the system total. These, except the last, would reflect obsolescence affecting appellant.

Rowley v. Chicago & N. W. Ry Co., *supra*, considered an issue concerning the amount of system value of an interstate railway that should be assigned to the State of Wyoming. The assessing authority had utilized four factors in making the allocation in question. The court said in sustaining the value assigned to the State of Wyoming the following: "Where, as in this case, the evidence requires a finding that the railroad in one of the States reached by the system is clearly shown to be worth much less than the average value per mile of the system, an apportionment on mileage necessarily assigns an excessive amount to that State, and the use of that basis as the sole measure for apportionment must be condemned as arbitrary. * * * In arriving at the relation between value in Wyoming and system value, the State board did not confine its calculations to relative mileage. That percentage combined with the other ratios used in the calculation produced 2.1% finally adopted. * * * We find no substantial support in the findings of the district court or in the evidence for the conclusion that the use that the state board made of relative mileage to ascertain the value of respondent's Wyoming railroad property was arbitrary or unreasonable * * *."

In Pleasant v. Missouri-K.-T. R. R. Co., 66 F. 2d 842, the court said: "That state Tax Commission, in determining percentage of value of interstate railroad system allocable to intrastate property, considered, besides main track mileage, factors reflecting use and usefulness of railroad property within state, held not to render commission's method fundamentally erroneous." In the opinion it is said: "In making this allocation the evidence is that the Commission viewed the property

in Kansas, and considered the main track mileage, the all-track mileage, the gross earnings, car and locomotive mileage, and traffic units, of Kansas as compared with the system * * *. In the Norfolk and Western R. Co. case, *supra* (3 F. Supp. 791), the Commission used the same factors used by the Commission here, and that court held that 'We do not see how a fairer method could have been used.' * * * In Louisville & Nashville R. Co. v. Greene, 244 U. S. 522, 543, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97, it was held that a statute requiring the Tax Commission to consider track mileage in allocation did not prohibit it from also considering gross revenues. Without attempting to exhaust the authorities, it seems clear to us that a railroad carrying a large volume of traffic is of more value than one with little traffic; that such useful value should be considered; that in order to consider it, resort must be had to those facts which reflect use—gross earnings, traffic units, or train miles—or some of them."

In Cleveland, C. C. & St. L. Ry. Co. v. Backus, 154 U. S. 439, 14 S. Ct. 1122, 38 L. Ed. 1041, the court said: "If an assessing board, seeking to assess for purposes of taxation a part of a railroad within a State, the other part of which is in an adjoining State, ascertains the value of the whole line as a single property and then determines the value of that within the State, upon the mileage basis, that is not a valuation of property outside of the State; and the assessing board, in order to keep within the limits of state jurisdiction, need not treat the part of the road within the State as an independent line, disconnected from the part without, and place upon that property only the value which can be given to it if operated separately from the balance of the road."

Bailey v. Megan, *supra,* states: "It is very apparent from the cases of Rowley v. Chicago & Northwestern Railway Co., 293 U. S. 102, 55 S. Ct. 55, 79 L. Ed. 222, and Great Northern Railway Co. v. Weeks, 297 U. S. 135, 56 S. Ct. 426, 80 L. Ed. 532, that there can be no

definite rule established by the courts for the ascertainment of the maximum allocation factor which may be used by state authorities in apportioning the value of a railroad system."

It is contended by appellant that in deciding system value by the use of factors, one of which was the capitalization of net income, appellee should have used a rate of at least 8 percent. This is not supported by judicial determination.

In Chicago, R. I. & P. Ry. Co. v. State, *supra,* this court said: "Again, the net railway operating income for 1922 is in evidence. The value of the property may in one sense be considered to be the amount of capital investment which will produce that amount of income at the rate of $5\frac{3}{4}$ per cent. per annum, which is considered by the interstate commerce commission to be a fair rate of return on such an investment, or at 6 per cent. which we consider to be a fair rate."

St. Louis-S. F. Ry. Co. v. Arkansas Public Service Commission, *supra,* declares: "The use of 6% by which to capitalize earnings value of railroad held neither arbitrary nor confiscatory."

In the recent case of Kansas City So. Ry. Co. v. Arkansas Commerce Commission, *supra,* the court said: "Appellant next argues that 5.75% should not be used as a capitalization rate. In the Frisco case, a 6% capitalization rate was approved, and this was before taxes. Here, the 5.75% rate is after taxes. If 6% before taxes was reasonable in the Frisco case, certainly it cannot be said that in the case at bar 5.75% after taxes is not justified."

Pleasant v. Missouri-K.-T. R. R. Co., *supra,* says on this subject: "The Commission capitalized the net revenues furnished to it by the company on a 6 per cent. basis. The master used 7 per cent. Both percentages are in the zone of reason * * *. Six per cent. is the rate of interest on judgments in Kansas; it is considered a good return on non-speculative investments * * *."

See, also, Chicago & N. W. Ry. Co. v. Department of Revenue, *supra;* Louisville &´ Nashville R. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E 97.

The findings of appellee in sections I, II, and III of its assessment order of July 15, 1959, concerning the property of appellant are correct and are adopted by this court.

The assessment of the 1959 property of appellant in Nebraska as contained in section IV of the assessment order of appellee of July 15, 1959, should be and it is hereby reversed.

It should be and is adjudged that the actual value of the property of appellant for 1959 in Nebraska is the sum of $15,047,539; that from 35 percent thereof or $5,-266,638 there should be deducted the value of the locally assessed property of appellant the sum of $82,000; and that the 1959 assessment of the property of appellant in Nebraska should be and is $5,184,638.

ORDER REVERSED. JUDGMENT OF ASSESSMENT RENDERED.